# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

```
CHEMFREE CORPORATION,            )
                                 )
        Plaintiff,               )
                                 )
v.                               )
                                 )   Civil Action No.
J. WALTER, INC., and             )   1:04-CV-3711 JTC
J. WALTER COMPANY, LTD.          )
                                 )
        Defendants.              )
===============================  )
ZYMO INTERNATIONAL INC.,         )
                                 )
        Movant for Intervention, )
                                 )
v.                               )
                                 )
J. WALTER, INC.,                 )
J. WALTER COMPANY, LTD., and     )
CHEMFREE CORPORATION,            )
                                 )
        Respondents to Motion to )
        Intervene                )
```

**BRIEF IN SUPPORT OF
CHEMFREE'S RESPONSE CONDITIONALLY OPPOSING
ZYMO INTERNATIONAL INC.'S MOTION TO INTERVENE;
AND
CHEMFREE'S CROSS-MOTION TO COMPEL ARBITRATION OF ITS
BILATERAL DISPUTE WITH INTERVENOR ZYMO INTERNATIONAL, INC.;
AND
CHEMFREE'S CROSS-MOTION TO STAY THIS LITIGATION
<u>PENDING ARBITRATION OF ITS BILATERAL DISPUTE WITH ZYMO</u>**

# <u>TABLE OF CONTENTS</u>

I.   SUMMARY OF CHEMFREE'S ARGUMENT.............................1

II.  STATEMENT OF THE CASE.....................................4

     A.   THE RELATIONSHIP BETWEEN CHEMFREE AND ZYMO IS
          GOVERNED BY A WRITTEN AGREEMENT THAT CONTAINS AN
          ARBITRATION CLAUSE................................... 4

          1.   The Co-Ownership Agreement Between ChemFree
               and ZYMO Contains a Provision to Arbitrate
               "All" Future Disputes.......................... 5

          2.   ZYMO's Rights to Participate in this
               Litigation  Are Governed By the Co-Ownership
               Agreement Which, Among Other Things, Requires
               ZYMO to Contribute to the Cost of the
               Litigation..................................... 6

          3.   An Arbitrable Controversy Has Arisen Regarding
               ZYMO's Allegation That ChemFree has Breached
               The Royalty Sharing Provisions of the Co-
               Ownership Agreement (Which Allegation ChemFree
               Denies)........................................ 7

          4.   Additional Arbitrable Controversies Between
               ChemFree and ZYMO.............................. 8

     B.   ARBITRATION BETWEEN CHEMFREE AND ZYMO OF THE
          "STANDING" ISSUE SHOULD MOOT WALTER'S PENDING
          MOTION TO DISMISS ON THE GROUNDS OF STANDING........ 10

III. ARGUMENT AND CITATION OF AUTHORITY.......................11

     A.   THE COURT SHOULD COMPEL ARBITRATION OF THE
          BILATERAL CHEMFREE-ZYMO DISPUTE..................... 11

          1.   The Federal Arbitration Act Should Be
               Liberally Construed in Favor of Arbitrating
               Disputes....................................... 11

          2.   The Controversies Between ChemFree and ZYMO
               Are Arbitrable Under the Co-Ownership
               Agreements Arbitration Clause.................. 12

          3.   The Co-Ownership Agreement and its Arbitration
               Clause Have Not Been "Terminated" By ZYMO...... 15

     B.   CHEMFREE CONDITIONALLY OPPOSES ZYMO'S MOTION TO
          INTERVENE.......................................... 16

1.  ZYMO's Purported Intervention "Rights" All
    Derive From Disputed Matters That Should Be
    Arbitrated...................................... 16

2.  ZYMO's Alleged Right To Be Substituted For
    Chemfree As A Successor-In-Interest By
    Forfeiture Is Governed By The Substitution
    Provisions Of Rule 25, Not The Intervention
    Provisions Of Rule 24.......................... 18

3.  ZYMO's Intervention and Participation, If
    Allowed, Should Be Limited to the Bare Minimum
    Required to Moot Walter's "Standing" Defense.... 20

C.  THE COURT SHOULD STAY THE PATENT LIABILITY ISSUES
    IN THIS CASE PENDING RESOLUTION OF THE
    ARBITRATION BETWEEN CHEMFREE AND ZYMO............... 22

# TABLE OF AUTHORITIES

## Cases:

*AT&T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (U.S.Ill. 1986)... 12

*Minnesota Mining & Mfg. Co. v. Eco Chem, Inc.,* 757 F.2d 1256, 1263, 225 U.S.P.Q. 350 (Fed.Cir.1985) ............................... 19

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (U.S.N.C. 1983)... 3, 11, 12

*Telectronics Pacing Systems, Inc. v. Guidant Corp.,* 143 F.3d 428 (8th Cir. 1998) ................................................. 12

*Veverica v. Drill Barge Buccaneer No. 7,* 488 F.2d 880, 886 (5th Cir.1974) .................................................... 19

*Willingham v. Star Cutter Co.,* 555 F.2d 1340, 1344-1346, 194 U.S.P.Q. 249 (6th Cir. 1977) ............................. 20

## Statutes:

9 U.S.C. § 1................................................... 11

9 U.S.C. § 2................................................... 11

9 U.S.C. § 3................................................ 3, 11

9 U.S.C. § 4................................................... 11

9 U.S.C. § 6................................................... 11

## Other Authorities:

6 MOORE'S FEDERAL PRACTICE (3d ed), § 24.23[1]................. 1, 21

NOW COMES Plaintiff ChemFree Corporation ("ChemFree") and hereby submits its Brief In Support Of ChemFree's Response Conditionally Opposing ZYMO International Inc.'s Motion To Intervene; And ChemFree's Cross-Motion To Compel Arbitration Of Its Bilateral Dispute With Intervenor ZYMO International, Inc.; And ChemFree's Cross-Motion To Stay This Litigation Pending Arbitration Of Its Bilateral Dispute With ZYMO.

## I.  SUMMARY OF CHEMFREE'S ARGUMENT.

1.  **INTERVENTION**:  ChemFree <u>conditionally</u> opposes ZYMO's intervention.  The Court should not allow ZYMO to intervene at this stage of the case unless it determines that ZYMO's participation is absolutely necessary to overcome Walter's "standing" defense.

2.  **INTERVENTION**:  A court may, in its discretion, grant intervention for a limited purpose.  6 MOORE'S FEDERAL PRACTICE (3d ed), § 24.23[1].  To the extent that the Court is inclined to grant ZYMO's intervention and/or otherwise permit or require ZYMO's joinder in order to overcome Walter's "standing" defense, ChemFree consents to ZYMO's intervention for the <u>limited purpose</u> of overcoming Walter's "standing" defense, i.e., to allay Walter's [completely unfounded] concern that ZYMO might bring a separate lawsuit.  However, ZYMO should not be permitted to participate fully in this litigation as ZYMO initially declined

to join in this action at its inception and ZYMO, at that time, waived its right to share in the judgment or settlement proceeds, which waiver is supported by valuable consideration.

3.  **INTERVENTION/SUBSTITUTION**:  ZYMO has moved the Court to enter the case under the incorrect procedural rule.  ZYMO expressly waived the right to have the ZYMO undivided, one-half interest in the subject patents represented in this suit by a written waiver dated September 23, 2004.  ZYMO asserts a right to participate in this case now because it claims to have succeeded to ChemFree's undivided, one-half interest in the subject patents through a property transfer, i.e., an alleged forfeiture.  Substitution of a successor-in-interest through a property transfer is governed by Fed.R.Civ.P. Rule 25, not Rule 24, and is a matter of convenience, not of right.

4.  **ARBITRATION**:  The relationship between ChemFree and Intervenor ZYMO International, Inc. ("ZYMO") is governed by, among other things, a certain Settlement Release and Indemnity Agreement (hereinafter the "Co-Ownership Agreement").  [Marks Affidavit, ¶ 5, Plaintiff's Exhibit 1].[1]  The Co-Ownership Agreement contains a provision requiring ZYMO to submit its disputes with ChemFree to binding arbitration.  The operable

---

[1] Hereinafter, Plaintiff will abbreviate "Plaintiff's Exhibit as simply "PX."

provisions of the Co-Ownership Agreement, including the
arbitration clause, remain in full force and effect.

     5.  **<u>ARBITRATION</u>**:  All of the bilateral dispute issues that
ZYMO has asserted against ChemFree in its intervention complaint
comprise disputes that are arbitrable under the arbitration
provision of the Co-Ownership Agreement.  Any doubts raised in
construing contract language on arbitrability should be resolved
in favor of arbitration.  *Moses H. Cone Memorial Hosp. v. Mercury Constr.
Corp.,* 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765
(1983).

     6.  **<u>STAY PENDING ARBITRATION</u>**:  This litigation should be
stayed pending the outcome of an arbitration proceeding between
ChemFree and ZYMO.  9 U.S.C. § 3.  Stay of the bilateral dispute
between ChemFree and Intervenor ZYMO is mandated by statute.  *Id*.
The patent infringement issues against Walter are inextricably
interwoven with the issues that must be submitted to
arbitration.  The patent infringement aspects of this litigation
will remain in a state of confusion until the bilateral
ChemFree-ZYMO dispute regarding patent ownership is first
resolved through arbitration.  The interests of judicial economy
will be served by staying the patent infringement/liability
issues in this litigation.

## II.  STATEMENT OF THE CASE.

This action was commenced by the filing of a Complaint on December 20, 2004, almost one year ago.  It is an action for patent infringement under 35 U.S.C. § 271.  There are five patents at issue in this litigation.  All five patents are directed to an environmentally friendly, bio-remediation parts washing system.  At the time the suit was commenced, all five patents were co-owned by ChemFree and ZYMO.

**A.   THE RELATIONSHIP BETWEEN CHEMFREE AND ZYMO IS GOVERNED BY A WRITTEN AGREEMENT THAT CONTAINS AN ARBITRATION CLAUSE.**

The historical relationship between ChemFree and ZYMO is strewn with a long line of civil actions involving ChemFree, ZYMO, a co-inventor named McClure, and the principles of both ChemFree and ZYMO.  [Marks Affidavit, ¶ 9].  Not counting the instant litigation, there have thus far been at least five lawsuits that have taken almost nine years to resolve including:

*ChemFree Corp. v. McClure (and Advanced Bioremediation Systems, Inc. as intervenor)*, Civil Action No. 95-A-03720-1, filed May 31, 1995, in Gwinnett County Superior Court, before Judge Ray;

*ChemFree Corp. v. Whiteman*, Civil Action No. 95-A-06587-3, filed October 11, 1995, in Gwinnett County Superior Court, before Judge Jackson;

*McClure v. ChemFree Corp.*, Civil Action No. 97-A-02496-1, filed July 22, 1997, in Gwinnett County Superior Court, before Judge Ray;

*McClure v. ZYMO International, Inc.*, Civil Action No. 99-A-01969-5, filed March 8, 1999, in Gwinnett County Superior Court, before Judge Winegarden; and

*ChemFree Corp. v. McClure*, Civil Action No. 1:00-CV-1530-JOF filed June 16, 2000, in U.S. District Court, N.D.Ga. before Judge Forrester;

The first two lawsuits, Gwinnett County Superior Court Civil Action Nos. 95-A-03720-1 and 95-A-06587-3 settled in October of 1996. [Marks Affidavit, ¶¶ 4 & 5]. As part of the settlement agreement, ChemFree and ZYMO (then known as Advanced Bioremediation Services, Inc. or "ABS") executed the Co-Ownership Agreement in which they co-assigned their respective patents and patent applications in the subject parts washer technology to each other. *Id.*

> 1.  **The Co-Ownership Agreement Between ChemFree and ZYMO Contains a Provision to Arbitrate "All" Future Disputes.**

Paragraph 3.2 of the Co-Ownership Agreement provides, in pertinent part, as follows:

> The Parties hereby specifically represent, covenant and warrant that . . . they shall from this date forward submit **any and all controversies, claims or disputes** between them to include but not limited to any controversies, claims or disputes arising from the "coassigned patent rights" or the interpretation of this agreement itself (hereafter "controversy"), to arbitration.

[PX1, ¶ 3.2 (emphasis added)].

Paragraph 3.2 further sets forth a procedure to govern the conduct of the arbitration including:  (i) furnishing notice of a controversy; (ii) selection of an arbitrator; (iii) submission of written evidence and argument to the arbitrator; (iv) timing and conduct of the hearing; and (v) issuance of a written arbitral award.  *Id*.  The parties have, in the past, arbitrated disputes using this procedure.  [Marks Affidavit, ¶ 9].

> **2.    ZYMO's Rights to Participate in this Litigation Are Governed By the Co-Ownership Agreement Which, Among Other Things, Requires ZYMO to Contribute to the Cost of the Litigation.**

The Co-Ownership Agreement requires that both parties must contribute equally towards the legal expense of any infringement suit.  [PX1, ¶ 2.5].  If one party pays less than an equal share, the other party may:  (i) be entitled to receive the full amount of any damages or settlement proceeds; and (ii) have the exclusive right to choose and direct counsel; and (iii) have the exclusive right to negotiate and agree to terms of settlement.  *Id*., pp. 30-31.  Furthermore, the failure of a party to pay its portion of the litigation costs can result in forfeiture of its co-assigned patent rights.  *Id*. at 33.

After learning of Walter's infringement, ChemFree and ZYMO corresponded about joining in a patent infringement suit.  However, rather that join a suit and contribute to its cost,

ZYMO sent a fax/letter on September 23, 2004, declining to participate in the action and disclaiming any interest in the damages or settlement funds from such an action, stating:  "... *ChemFree is free to pursue infringement action and entitled to full recovery of damages* ..." [Marks Affidavit, ¶ 8; PX3].

ZYMO also took the position that it was not obligated to contribute to the cost of this or any other patent infringement suit in which it declined to join. *Id*.  For purposes of the instant suit only, ChemFree excused ZYMO from contributing to the cost of litigation in consideration for ZYMO totally disclaiming all judgment/settlement proceeds from the suit. Otherwise, ChemFree and ZYMO submitted the issue of contribution to litigation expense to arbitration which was heard by the arbitrator during the summer of 2005.  The Arbitrator upheld ChemFree's interpretation that financial contribution to litigation was mandatory.  [Marks Affidavit, ¶ 9; PX 5].

   3.   **An Arbitrable Controversy Has Arisen Regarding ZYMO's Allegation That ChemFree has Breached The Royalty Sharing Provisions of the Co-Ownership Agreement (Which Allegation ChemFree Denies).**

The triggering event to ZYMO's recent motion to intervene is a letter that ZYMO sent to ChemFree on or about October 26, 2005, purporting to terminate and forfeit ChemFree's entire co-owned patent portfolio related to bioremediation parts washer

technology.  [Marks Affidavit ¶ 12].  ChemFree has written to ZYMO and demanded that the underlying dispute giving rise to the October 26 2005, letter be submitted to arbitration.  [Marks Affidavit ¶ 12, PX 9].  ZYMO, however, refuses to submit the dispute to arbitration and maintains the position that its scheme to work a total forfeiture of all of ChemFree's patent rights is a *fait accompli*.  [Marks Affidavit ¶ 14, PX 11].  ChemFree disagrees and maintains that ZYMO has merely raised a dispute that is subject to arbitration under the Co-Ownership Agreement.

ChemFree herein moves the Court to compel arbitration of this dispute.

### 4. Additional Arbitrable Controversies Between ChemFree and ZYMO.

In addition to the dispute regarding ZYMO's purported termination of ChemFree's patent rights, there are a number of additional controversies between ChemFree and ZYMO that should be submitted to arbitration including:

1. The amount of damages that should be awarded to ChemFree for ZYMO's breach of its contractual duty to contribute to the cost of foreign patent prosecution, ZYMO's liability having already been determined through arbitration. [PX 5];

2.  ZYMO's violation of the non-disparagement provisions of paragraph 13.0 of the Co-Ownership Agreement by telling European customers that ChemFree has lost its patent rights;

3.  ZYMO's violation of paragraph 11.0 of the Co-Ownership Agreement which prohibits ZYMO from misrepresenting ownership of the co-assigned patents;

4.  ZYMO is interfering with ChemFree's business relationships with its customers, including in Europe, causing money damages;

5.  ZYMO is slandering ChemFree's title in its patents, causing money damages;

6.  "Standing" including whether ZYMO retained the right to bring a separate action against Walter when it elected not to join the Walter infringement suit in December of 2004;

7.  ZYMO's breach of the litigation cooperation clause in paragraph 2.5 of the Co-Ownership Agreement for refusing to make witnesses available to furnish testimony in opposition to Walter's "standing" defense and motion to dismiss;

8.  Whether ZYMO's letter of September 23, 2004, operates as a waiver of ZYMO's right to participate as a party in the Walter infringement litigation;

9.   Whether ZYMO has a right to intervene and participate in the Walter infringement litigation without first paying its share of legal expenses incurred to date; and

10.   Whether ZYMO must take a subordinate role in the Walter action and allow ChemFree to select counsel, direct the litigation, and control settlement discussions and terms until such time as ZYMO contributes 50 percent of the litigation expense incurred.

**B.    ARBITRATION BETWEEN CHEMFREE AND ZYMO OF THE "STANDING" ISSUE SHOULD MOOT WALTER'S PENDING MOTION TO DISMISS ON THE GROUNDS OF STANDING.**

Currently pending before the Court is Walter's Motion to Dismiss on the Grounds of Standing.  [Docket No. 59].  The motion has been extensively briefed on both sides and will not be re-argued here.  ChemFree simply points out to the Court that an arbitral award fully and finally settling any outstanding issue between ChemFree and ZYMO as to whether ChemFree had standing to bring this suit as sole plaintiff in December of 2004, should moot Walter's pending motion, obviating the necessity of the Court to expend judicial resources considering the matter.

Accordingly, ChemFree moves the Court to stay consideration of Walter's motion to dismiss [Docket No. 59] pending arbitration of the standing issue between ChemFree and ZYMO.

### III.   ARGUMENT AND CITATION OF AUTHORITY.

A.   THE COURT SHOULD COMPEL ARBITRATION OF THE BILATERAL
CHEMFREE-ZYMO DISPUTE.

1.   The Federal Arbitration Act Should Be Liberally
Construed in Favor of Arbitrating Disputes.

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq*, provides
that a written provision in any contract evidencing a
transaction involving commerce to settle a controversy by
arbitration shall be valid, irrevocable, and enforceable.   9
U.S.C. § 2.   Where one party to an arbitration agreement refuses
to voluntarily submit to arbitration, the District Court may
compel the recalcitrant party to arbitrate its dispute.   9
U.S.C. § 4.   Upon determining that a dispute is arbitrable, the
District Court is required (i.e., "shall") to stay related
pending civil actions pending outcome of the arbitration.   9
U.S.C. § 3.

The proper way to initiate a proceeding to compel
arbitration is by motion.   9 U.S.C. § 6.   The motion is entitled
to an "an expeditious and summary hearing, with only restricted
inquiry into factual issues."   *Moses H. Cone Memorial Hosp.*, 460 U.S. at
23, 103 S. Ct. at 941.

The Federal Arbitration Act is liberally construed by the
courts in favor of compelling arbitration.   The Supreme Court
has held that the underlying Congressional policy favors the

-11-

rapid and unobstructed enforcement of arbitration agreements. *Moses H. Cone Memorial Hosp., supra*.  Any doubts raised in construing contract language on arbitrability "should be resolved in favor of arbitration."  *Moses H. Cone Memorial Hosp.,* 460 U.S. at 24-25, 103 S.Ct. at 941.

"Questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Memorial Hosp.,* 460 U.S. at 22, 24, 103 S.Ct. at 940, 941.  Generally "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"  *AT&T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (U.S.Ill. 1986).  In ruling on the arbitrability of a dispute, a court should not decide the merits of the underlying claims.  *Telectronics Pacing Systems, Inc. v. Guidant Corp.,* 143 F.3d 428 (8th Cir. 1998).

### 2.   The Controversies Between ChemFree and ZYMO Are Arbitrable Under the Co-Ownership Agreements Arbitration Clause.

ChemFree will spare the Court from a laborious discussion of the merits of the various disputes between ChemFree and ZYMO,

as the Court is admonished to refer arbitrable disputes to arbitration without reaching the merits.  Suffice it to say that ZYMO has been a thorn in ChemFree's side from the day that co-inventor James McClure left ChemFree and formed ZYMO, more than ten years ago

In stark contrast to the commercial success that ChemFree has achieved in manufacturing, marketing, and distributing its patented SmartWasher$^{TM}$ line of products throughout the United States, Canada, Europe, and Australia, ZYMO is a failed business enterprise.  ZYMO has all but completely shut down its manufacturing and product distribution operations.  Co-inventor McClure left ZYMO years ago in yet another of his frequent disputes over compensation.  ZYMO has been unsuccessful in manufacturing and selling patented products.  ZYMO has been similarly unsuccessful in licensing the patented technology to third-parties.  ZYMO is believed to lack the financial resources to participate in the marketplace in any meaningful way, evidenced in part by its initial unwillingness to join and contribute to the expense of the instant patent infringement suit against Walter.

ZYMO's October 2005 letter purporting to "terminate" ChemFree's patent rights is merely the latest chapter in a lengthy story of ZYMO's repeated efforts to profit by

-13-

misappropriating ChemFree's intellectual property rights.  It

constitutes a dispute that is arbitrable under paragraph 3.2 of

the Co-Ownership Agreement.

Paragraph 3.2 of the Co-Ownership Agreement requires

arbitration of:

> ... **any and all controversies**, claims, or disputes . .
> . to include but not limited to any controversies,
> claims, or disputes arising from the 'co-assigned
> patent rights' or the interpretation of this agreement
> itself ...

[PX 1, ¶ 3.2 (emphasis added)].  The dispute involving

ChemFree's alleged failure to pay royalties, which gave rise to

ZYMO's October 2005 "termination" letter, unquestionably falls

within the purview of the foregoing arbitration clause.

Similarly, ZYMO's allegations that ChemFree is now infringing

"ZYMO's patents" is derived from the foregoing "termination"

dispute and is arbitrable under the agreement.  Furthermore,

ZYMO's assertions of a right to intervene are derived from its

contention that ZYMO is the lawful successor-in-interest to

ChemFree's undivided one-half interest in the patents -- this

too, is an arbitrable dispute under the Agreement.  Finally, all

of the controversies listed in Section II.A.4. above arise

either from:  (i) the co-assigned patent rights; or (ii)

interpretation of the Co-Ownership Agreement itself and,

therefore, are also arbitrable under the agreement.

3.   **The Co-Ownership Agreement and its Arbitration Clause Have Not Been "Terminated" By ZYMO.**

In a letter from ZYMO's attorney, Mr. Sibley, to ChemFree's officer, Mr. Marks, dated December 6, 2005, ZYMO refused ChemFree's request to submit the "termination" dispute and its underlying royalty payment dispute to arbitration.  The December 6 letter stated, in pertinent part, as follows:

> Regarding your request for arbitration concerning royalties and Wynns, it is ZYMO's position that pursuant to the terms of 2.3.4.4 of the Settlement Release and Indemnity Agreement it is too late to arbitrate the issue of royalties and the issue of the granting of a license or beneficial use to Wynns.  The patents have automatically reverted to ZYMO pursuant to the terms of the Agreement.  **Arbitration is no longer an option**.

[Marks Affidavit, ¶ 14, PX 11 (emphasis added)].

ZYMO's contention that "*arbitration is no longer an option*" is without merit.  The Co-Ownership Agreement shall terminate (only) under the following circumstances:

1. in the event that prosecution of all patent applications is abandoned and no patents ever issue; or

2. when the last unexpired patent claim expires; or

3. by mutual agreement of all parties bound by the agreement.

[PX 1, ¶ 15.0].  None of the foregoing events have transpired. Patents did, in fact, issue from the applications pending at the time of the Co-Ownership Agreement.  The last unexpired patent

claim has not yet expired, and finally, ChemFree has certainly not agreed to any termination.

In summary, the Co-Ownership Agreement, and its arbitration clause, remain in full force and effect.  All of the above mentioned disputes between ChemFree and ZYMO are arbitrable under the Co-Ownership Agreement.  ZYMO refuses to cooperate in submitting the disputes to arbitration.  Consequently, the Court should hear this matter promptly and enter an appropriate order compelling ZYMO to submit these disputes to binding arbitration.

**B.    CHEMFREE CONDITIONALLY OPPOSES ZYMO'S MOTION TO INTERVENE.**

**1.    ZYMO's Purported Intervention "Rights" All Derive From Disputed Matters That Should Be Arbitrated.**

As between ZYMO's motion to intervene and ChemFree's cross-motion to compel arbitration, the Court should:  (i) grant ChemFree's motion to compel arbitration immediately; and should otherwise (ii) defer consideration of ZYMO's motion to intervene until a final arbitration award has been issued on the arbitrable controversies related to ZYMO's motion to intervene.

Many, if not all, of the legal rights that ZYMO has asserted in its motion to intervene and its accompanying intervention complaint involve arbitrable disputes between ChemFree and ZYMO.  In order for this litigation to proceed in an orderly manner, the Court should allow an arbitrator to first

determine whether and to what extent ZYMO has an interest in this litigation before the Court decides whether ZYMO should be permitted to intervene.

ZYMO's rights are limited, among other things, by its September 23, 2004, letter to ChemFree, wherein ZYMO expressly waived its right to join in this litigation and waived its right to share in the settlement or judgment proceeds from this litigation. [Marks Affidavit, ¶ 8, PX3]. ZYMO's waiver was not a gift to ChemFree, it was supported by valuable consideration in the form of ChemFree excusing ZYMO from its mandatory contribution obligations to the expense of this litigation.

In summary, ZYMO waived its right to join this case at its inception and ZYMO should not be permitted at this juncture to change its position, particularly where ChemFree has already spent several hundred thousand dollars prosecuting this case in reliance on ZYMO's waiver. Any purportedly new, different, or additional "rights" that ZYMO has allegedly acquired since the inception of this case are all matters of dispute that should be arbitrated and will, in all likelihood, evaporate when the arbitration award is issued.

    **2.   ZYMO's Alleged Right To Be Substituted For Chemfree As A Successor-In-Interest By Forfeiture Is Governed By The Substitution Provisions Of Rule 25, Not The Intervention Provisions Of Rule 24.**

ZYMO is attempting to enter this litigation under the wrong procedural rule.  The gist of ZYMO's newly asserted interest in this litigation is essentially as follows.  In 2004, two parties (ChemFree and ZYMO) each held undivided one-half interests in the subject patents.  In September of 2004, ZYMO declined to have its undivided, one-half interest represented in this suit and authorized that ChemFree's undivided, one-half interest could proceed unilaterally and retain all of the proceeds from the suit.  One year later in October of 2005, ZYMO claims to have become the successor-in-interest by forfeiture of ChemFree's undivided one-half interest in the patents.  ZYMO now seeks to step into ChemFree's shoes and take over the litigation from the moment in time when it purportedly acquired ChemFree's interests via forfeiture.  ZYMO's motion to intervene is thus more properly viewed as an effort by ZYMO to substitute itself for ChemFree as the real-party-in-interest to ChemFree's undivided one-half interest in the patents.  ChemFree disputes that ZYMO has succeeded to its undivided one-half interest via forfeiture.  Thus, there are now two parties before this Court claiming to own the same piece of property, namely, ChemFree's

undivided one-half interest in the patents.  ZYMO should not be substituted for ChemFree when the fact of whether it has succeeded to ChemFree's interest is not, by any means, established.  This ownership dispute should be resolved by arbitration before ZYMO is allowed to join this suit.

ChemFree was the real-party-in-interest of its undivided one-half interest at the time of commencement of this case in December of 2004.  The alleged forfeiture events took place almost one year later, in October of 2005.  Where the transfer of a property interest takes place during the pendency of a civil action, Fed.R.Civ.P. 25(c) applies.  *Veverica v. Drill Barge Buccaneer No. 7*, 488 F.2d 880, 886 (5th Cir.1974).  Substitution under Rule 25(c) is purely a matter of convenience.  *Minnesota Mining & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1263, 225 U.S.P.Q. 350 (Fed.Cir.1985).  In the instant case, there is an open question as to whether an involuntary transfer by forfeiture has even occurred, which open question should be resolved through arbitration.  Until ZYMO establishes that it is the lawful successor to ChemFree's undivided one-half interest through a tribunal of competent jurisdiction, ChemFree should be permitted to continue to represent its own interest without ZYMO's interference.

    **3.    ZYMO's Intervention and Participation, If Allowed, Should Be Limited to the Bare Minimum Required to Moot Walter's "Standing" Defense.**

As previously and extensively briefed, ChemFree maintains that ZYMO's September 23, 2004, letter conferred on ChemFree the sole right to prosecute this patent infringement case as the patentee-plaintiff.  Prior to September 23, 2004, neither ChemFree nor ZYMO had the unilateral right to sue for patent infringement without joining their respective co-owner.  However, on September 23, 2004, ZYMO conferred such a right on ChemFree, but ChemFree conferred no such reciprocal right on ZYMO.  Therefore, Walter is in no danger of multiple suits and none of the three public-policy, prudential standing factors come into play.  *See Willingham v. Star Cutter Co.*, 555 F.2d 1340, 1344-1346, 194 U.S.P.Q. 249 (6th Cir. 1977).[2]  ChemFree reiterates its position that ZYMO's joinder under Fed.R.Civ.P. 19 is not necessary.

However, if the Court determines that ZYMO's joinder to this lawsuit is necessary for this case to proceed under

_____

    [2] The three prudential standing considerations identified in *Willingham* are: (1) the interest of a co-owner in being able to license third parties under his or her patent without harassing suits by other co-owners; (2) the interest of a co-owner in avoiding the estoppel effect of a judgment declaring the patent invalid in which he or she did not participate; and (3) the interest of a defendant in avoiding multiple suits concerning infringement of the same patent.  *Id.*

Fed.R.Civ.P. 19(a) and (b), then <u>conditioned on such event</u>, ChemFree will consent to ZYMO's intervention for the limited purpose of defeating Walter's standing defense and accompanying motion to dismiss.  ZYMO's participation in this litigation, however, should be limited in accordance with the scope of its waiver letter of September 23, 2004, and its contractual obligations to contribute to ChemFree's costs incurred in this litigation to date.

It is settled that a trial court is not restricted to either granting or denying a motion for unlimited intervention. The district court has the authority to grant a motion to intervene for a specific, limited purpose.  6 MOORE'S FEDERAL PRACTICE (3d ed) § 24.23[1].  In the instant case, ZYMO should not be permitted to pursue a damages claim against Walter or share in any settlement proceeds, as ZYMO has already irrevocably disclaimed an interest in such.  Furthermore, if the Court is inclined to allow ZYMO to participate in the case in any manner beyond being a mere passive party whose presence is allowed solely to defeat Walter's standing defense, then the Court should condition ZYMO's intervention on the immediate payment of ChemFree of one-half of its legal expense incurred, to date, in this case.  [PX 1, Co-Ownership Agreement, ¶ 2.5].

**C.   THE COURT SHOULD STAY THE PATENT LIABILITY ISSUES IN THIS CASE PENDING RESOLUTION OF THE ARBITRATION BETWEEN CHEMFREE AND ZYMO.**

Because the patent liability issues asserted by ChemFree (and now ZYMO) against Walter are inextricably interwoven with the bilateral, arbitrable issues between ChemFree and ZYMO, the Court should stay this entire case pending the outcome of the arbitration.  Section 3 of the Federal Arbitration Act provides, in pertinent part, as follows:

> § 3. Stay of proceedings where issue therein referable to arbitration
>
> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, **shall on application of one of the parties stay the trial of the action** until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

[emphasis added].  ChemFree respectfully submits that use of the term "shall" in the statute indicates that imposition of a stay is mandatory.

Currently pending before this Court is a motion [Docket No. 60], brought by Walter, to stay this case pending the outcome of its motion to dismiss on the grounds of standing.  [Docket No. 59].  ChemFree initially opposed such a stay, in part, because

it was optimistic that its dispute with ZYMO could be quickly resolved through arbitration.  However, ZYMO's recent motion to intervene, coupled with ZYMO's abject refusal to arbitrate the "termination" and patent royalty issues stated in its December 6, 2005, letter has altered the landscape.  A stay of even greater scope than Walter's pending request is now necessary.

In the interest of judicial economy and the orderly disposition of this litigation, ChemFree moves this Court to compel ZYMO to arbitrate the disputes as to who owns the subject patents and whether ChemFree has unilateral standing to prosecute this case as the sole plaintiff.  Contemporaneously, ChemFree proposes that this litigation be STAYED, pursuant to 9 U.S.C. § 3, pending the outcome of the arbitration.

Resolving the ChemFree-ZYMO bilateral dispute and the patent infringement/liability issues against Walter sequentially rather than contemporaneously will relieve the Court, and the parties, from the twin burdens of confusion and duplicative effort.  The arbitration, once compelled, should not last long. The arbitration proceeding is designed to:  (i) select an arbitrator within 22 days; and (ii) exchange evidence and argument in written submissions over a period of 30 days.  The arbitrator then has 30 days from the last written submission, or the date of the hearing, if a hearing is conducted, to issue an

arbitral award.  This is a reasonably short time and ChemFree submits that Walter will not be unduly prejudiced and, in fact, will ultimately benefit, from such a short postponement of this case.

WHEREFORE, ChemFree respectfully prays that the Court will consider its request and grant it the following relief:

1.  Enter an order compelling intervenor-movant ZYMO to submit the disputes raised in its intervention complaint against ChemFree and the additional disputes and controversies identified by ChemFree in this brief and in the accompanying Marks Affidavit, including, without limitation, the controversy related to ChemFree's "standing" to pursue a patent infringement against Walter as sole plaintiff, to binding arbitration; and

2.  Enter an order staying this case, including a stay of consideration of ZYMO's motion to intervene and Walter's motion to dismiss on the grounds of standing [Docket No. 59], pending the outcome of court ordered arbitration between ChemFree and ZYMO.

Respectfully submitted, this 21st day of December, 2005.

| | |
|---|---|
| 3500 One Atlantic Center | WOMBLE CARLYLE SANDRIDGE & RICE, PLLC |
| 1201 West Peachtree Street | |
| Atlanta, Georgia 30309 | /s/ *William A. Capp* |
| Telephone:  (404) 872-7000 | |
| Facsimile:  (404) 870-8178 | William A. Capp |
| Counsel for Plaintiff, | Georgia State Bar No. 108823 |
|   ChemFree Corporation | bcapp@wcsr.com |

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2005, I electronically filed **BRIEF IN SUPPORT OF CHEMFREE'S RESPONSE CONDITIONALLY OPPOSING ZYMO INTERNATIONAL INC.'S MOTION TO INTERVENE; AND CHEMFREE'S CROSS-MOTION TO COMPEL ARBITRATION OF ITS BILATERAL DISPUTE WITH INTERVENOR ZYMO INTERNATIONAL, INC.; AND CHEMFREE'S CROSS-MOTION TO STAY THIS LITIGATION PENDING ARBITRATION OF ITS BILATERAL DISPUTE WITH ZYMO** with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

| | |
|---|---|
| MCKENNA, LONG & ALDRIDGE, LLP | HAWKINS & PARNELL, LLP |
| James J. Thomas, II | Jack N. Sibley |
| *jthomas@mckennalong.com* | *jsibley@hplegal.com* |
| Rel S. Ambrozy | |
| *rambrozy@mckennalong.com* | |

/s/ *William A. Capp*
_____
William A. Capp (#108823)

| |
|---|
| In accordance with Local Rule 7.1D, counsel for Plaintiff certifies that the foregoing has been prepared using the font Courier New 12 point. |