IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHEMFREE CORPORATION,

    Plaintiff

      v.

J. WALTER, INC., and
J. WALTER COMPANY, LTD.

    Defendants.

CIVIL CASE NO.
1:04-CV-3711-JTC

# O R D E R

This matter is currently before the Court on Plaintiff's request for the
Court to conduct an investigation into possible attorney misconduct [#246].
After considering the allegations and holding a hearing on Plaintiff's request,
the Court declines the invitation to conduct further investigation. Plaintiff's
emergency request [#246] is **DENIED**.

## I.    Background

Plaintiff's counsel asks the Court to conduct an investigation into
alleged misconduct by counsel for Defendants, the law firm of McKenna Long
& Aldridge LLP ("McKenna"). Plaintiff's allegations are based on the
following facts:

Plaintiff filed a claim of patent infringement against Defendants. As a
defense, Defendants allege that they found evidence of public use of the
invention in question prior to the date when Plaintiff claims to have conceived

of the invention.  To support this, Defendants provided sworn declarations by four individuals: Robb Bucklin, Glenn Knowlton, William Lashmett, and Brent Lashmett (collectively "Declarants").  After Plaintiff received copies of the declarations, Plaintiff's counsel sought to depose the Declarants and served subpoenas on them in July 2007.

Knowlton, Bucklin, and W. Lashmett contacted Plaintiff's counsel in mid-July 2007 concerning their scheduled depositions. Plaintiff's counsel advised each that he represented a party adverse to Defendant, and asked each if they would consent to an interview regarding the contents of their declarations.  Each consented and were interviewed by counsel for Plaintiff.

On August 16, 2007, before the scheduled depositions, Plaintiff's counsel again spoke with Mr. Knowlton and asked him whether he would provide Plaintiff a sworn declaration containing the facts disclosed in his prior telephone interview.  Plaintiff's counsel indicated to Knowlton that this might alleviate the necessity for a formal deposition.  Knowlton agreed, but stated that he felt the need to contact McKenna prior to such a declaration.

The day after Plaintiff's counsel's second telephone interview with Mr. Knowlton, McKenna sent Plaintiff's counsel a letter indicating that McKenna represented Knowlton, Bucklin, and Lashmett in connection with their depositions in this case.  The letter asked Plaintiff's counsel to refrain from

2

any *ex parte* communications with the Declarants, as it was improper since they were represented by McKenna.

Plaintiff's counsel requests an investigation into whether the alleged attorney-client relationships between McKenna and the Declarants are bona fide, or whether they are a sham used to obstruct Plaintiff's access to the witnesses. Furthermore, Plaintiff's counsel requests an investigation as to whether McKenna's simultaneous representation of Defendants and the Declarants for the purposes of their depositions is unethical.

## II.    Legal Standard

### A.    The Georgia Rules of Professional Conduct

All lawyers practicing before the United States District Court for the Northern District of Georgia are governed by the Georgia Rules of Professional Conduct. N.D. Ga. R. 83.1(C). Plaintiff's counsel asserts that McKenna violated Rules 1.7, 3.4, and 7.3 of the Georgia Rules of Professional Conduct by soliciting the witnesses as clients for the purpose of preventing Plaintiff's counsel from having access to them.

#### *1. Rule 1.7*

Plaintiff's counsel first argues that McKenna violated Rule 1.7 of the Georgia Rules of Professional Conduct by representing a party to a lawsuit, while at the same time representing the Declarants who were fact witnesses

in the same lawsuit.  Rule 1.7 provides that "a lawyer shall not represent or
continue to represent a client if there is a significant risk that . . . the lawyer's
duties to another client, a former client, or a third person will materially and
adversely affect the representation of the client."  GA. R. PROF. CONDUCT
1.7(a).  "In order for counsel to have standing to raise the issue of an opposing
lawyer having a conflict of interest . . . , *there must be a violation of the rules*
*which is sufficiently severe* to call in question the fair and efficient
administration of justice . . . and *opposing counsel must provide*
*substantiation*."  <u>Bernocchi v. Forucci</u>, 279 Ga. 460, 463, 614 S.E.2d 775, 779
(2005) (emphasis added).

It is not facially improper to simultaneously represent a party in a case
and also to represent a non-adversarial, fact witness in that case.  In fact, the
Practicing Law Institute directly addressed the issue of simultaneous third
party representation in its "Litigation and Administrative Practice Handbook
Series" where it stated:

> Assuming that no conflict of interest exists, there typically would
> be no reason why the defending attorney could not also represent
> a nonparty witness for purposes of that witness's deposition.
> That representation should prevent the adverse party from
> inquiring into the substance of the conversation between the
> witness and the defending lawyer in preparation for the
> deposition.

John G. Koeltl & Paul C. Palmer, <u>Taking and Defending Depositions in</u>

4

Commercial Cases: Preparing a Witness to Testify, 469 P.L.I. LIT. 9, 16 (1993).

The authors of this treatise recognize that representing a third party during a deposition while also serving as defense counsel changes the rules of the deposition process and calls particular attention to the manner in which the attorney was retained by the third party.  The decision to simultaneously represent a third party witness is a strategic method to use privilege to lawfully obstruct some limited discovery.

Although this provides some opportunity for counsel to influence the testimony of the witness, it also allows opposing counsel to question the witness, now identified with an adverse party, by leading questions.  Fed. R. Evid. 611(c).  Without more, the fact of the representation of the witness and the party does not violate the rule.

### 2. Rule 3.4

Plaintiff argues that, by soliciting the witnesses as clients *after* Plaintiff's counsel initially spoke with them, McKenna violated Rule 3.4 of the Georgia Rules of Professional Conduct.  Rule 3.4 states that a lawyer shall not "unlawfully obstruct another party's access to evidence."  GA. R. PROF. CONDUCT 3.4(a).

Plaintiff's counsel argues that McKenna's attempts to prevent

5

Plaintiff's counsel from contacting the Declarants is "contrary to [the] time-honored and decision-honored principles" that "counsel for all parties have a right to interview an adverse party's witnesses . . . in private, without the presence or consent of opposing counsel and without a transcript being made." I.B.M. v. Edelstein, 526 F.2d 37, 42 (2d Cir. 1975).  Plaintiff also cites Gregory v. United States for the proposition that parties do not have "the right to interfere with the preparation of the [opposing party's case] by effectively denying [opposing] counsel access to the witnesses except in his presence."  369 F.2d 185, 188 (D.C. Cir. 1966).

The dual representation invokes particular scrutiny of the ethical constraints on lawyer solicitation.  Id. at 16-17.

### 3. Rule 7.3

The arrangements for the representation of the nonparty at the deposition are subject to the ethical  constraints on lawyer solicitation. Plaintiff argues that Defendants' counsel personally solicited the business of the witnesses in violation of Rule 7.3 of the Georgia Rules of Professional Conduct.  See GA. R. PROF. CONDUCT 7.3(d).  See also Koeltl & Palmer, *supra*, at 16-17 ("Any arrangements for the representation of a nonparty in a deposition would be subject to applicable constraints on lawyer solicitation.").

The law on the matter of attorney solicitation is clear in both the ABA

Model Rules of Professional Conduct and the Georgia Rule of Professional

Conduct 7.3.  In Georgia, the rule reads: "[a] lawyer may not solicit

professional employment as a private practitioner . . . through direct personal

contact or through live telephone contact, with a non-lawyer who has **not**

sought advice regarding employment of a lawyer."  Ga. R. Prof. Cond. 7.3(d)

(emphasis added).

Additionally, the Georgia rule comports with an ancient, but telling

ABA Committee on Professional Ethics Informal Opinion issued pursuant to

a query on the ethics of simultaneous third party witness representation:

> [W]here one party (defendant) gives notice of taking depositions
> of independent witnesses (former employees of plaintiff
> corporation), is it proper for the attorney for the other party
> (plaintiff) to invite the noticed witnesses to engage him as
> attorney to represent them during their depositions, concurrently
> with his serving as attorney for the other party (plaintiff)?

ABA Informal Opinion 828 (1965).  The Committee on Professional Ethics

held that "[i]t is *not* proper for [an] attorney to invite the witness to engage

him as attorney to represent the witness during deposition." <u>Id.</u> (emphasis

added).  The ABA's opinion was based on the old Canons of Professional

Ethics, which were replaced in 1969 by the ABA Model Code of Professional

Responsibility, and in 1983 by the ABA Model Rules of Professional Conduct.

Though the Canons themselves have been replaced, the concerns on lawyer

7

solicitation that formed the basis for Informal Opinion 828 are the same as those expressed in the current Georgia Rule of Professional Conduct: "There is a potential for abuse inherent in solicitation through direct personal contact by a lawyer of prospective clients known to need legal services." Ga. R. Prof. Conduct 7.3, comment 1.

> B.    <u>The Local Rules of the Northern District of Georgia</u>

The Local Rules in this District set forth specific procedures and guidelines to follow upon receiving complaints of professional misconduct. If the questions raised in the complaint are unsupported or unsubstantiated, the judge may simply terminate the inquiry. N.D. Ga. R. 83.1(F)(2)(a).

If, however, the alleged professional misconduct "justifies further inquiry," the judge should refer the matter to the State Disciplinary Board of the State Bar of Georgia for investigation if the attorney in question is a member of the State Bar of Georgia. N.D. Ga. R. 83.1(F)(2)(b). If, on the other hand, the attorney in question is not a member of the State Bar of Georgia and further inquiry is necessary, the matter should be referred to this Court's Committee on Discipline[1] for investigation. N.D. Ga. R. 83.1(F)(2)(d). Thus, the question presented is whether the facts of this case

---

[1] <u>See</u> N.D. Ga. R. 83.1(F)(5); App. G (setting forth the rules governing the Committee on Discipline for the United States District Court, Northern District of Georgia).

"justify further inquiry" by referral to either the State Bar or the Court's Committee on Discipline.

## III.   Analysis

Plaintiff's counsel accuses McKenna of unethical conduct with respect to McKenna's relationship with Knowlton, Bucklin, and W. Lashmett.  For the following reasons, the Court finds that Plaintiff's counsel's allegations do not justify further inquiry.

### A.   Knowlton

In December 2005, Defendants engaged Knowlton as a non-testifying expert consultant.  (Ambrozy Decl. ¶¶ 2-3; Knowlton Decl. ¶ 2.)  Knowlton was retained in order to help Defendants's counsel understand the technology of parts washing systems, including the use of bio-remediating organisms in parts washing systems.  (Id.)  Defendants memorialized this engagement in a letter, which was dated December 8, 2005.  (Knowlton Decl. Ex. A.)

Because Defendants formally retained Knowlton as an expert consultant well before Plaintiff's counsel attempted to speak *ex parte* with Knowlton, it was proper for Defendants' counsel to request Plaintiff's counsel not to interview Knowlton outside the environment of a formal deposition.  Therefore, the Court will not inquire further into Plaintiff's counsel's allegations regarding McKenna's relationship with Knowlton.

B.    W. Lashmett and Bucklin

*1. Rule 1.7*

As to W. Lashmett and Bucklin, however, Defendants did not have a similar consulting relationship.  Although McKenna's conduct with respect to these Declarants raises professionalism concerns, no information indicates a conflict of interest existed.  As the PLI article stated, "*[a]ssuming that no conflict of interest exists*, there typically would be no reason why the defending attorney could not also represent a nonparty witness for purposes of that witness's deposition."  Koeltl & Palmer, supra, at 16 (emphasis added).  This is also the policy expressed in the Georgia Rules of Professional Conduct.

In this case, Plaintiff has not shown that the interests of either Bucklin or Lashmett are adverse to those of Defendants.  Therefore, absent a showing that the interests of the Declarants are adverse to those of Defendants, the Court will not refer this matter either to the Georgia Bar or the Court's Disciplinary Committee.

*2. Rule 3.4*

Plaintiff also argues that, by soliciting the business of Bucklin and Lashmett *after* Plaintiff's counsel initially spoke with them, Defendants' counsel may have violated Rule 3.4 of the Georgia Rules of Professional

Conduct if their purpose in engaging Bucklin and Lashmett was to prevent Plaintiff's access to those witnesses.

Neither <u>I.B.M.</u> nor <u>Gregory</u> , the cases relied upon by Plaintiff, addressed whether actions similar to those of McKenna constitute an unethical obstruction of another's access to evidence.  Plaintiff cites no authority interpreting the Georgia Rules of Professional Conduct to support its theory.  Furthermore, Plaintiff was not prevented from examining the witnesses under oath.  Defendant may have gained a tactical advantage from representing the witnesses at their depositions, but the present record does not show an intentional attempt to deprive Plaintiff of access to the witnesses or their evidence.

Plaintiff's allegations concerning Rule 3.4, therefore, do not justify further inquiry.  The Court will, however, consider the fact of the witnesses' being represented by the same counsel as Defendant in judging the credibility of the witnesses testimony and the weight to be given to it.[2]

### 3. Rule 7.3

The record is unclear as to whether McKenna initiated the question of

---

[2] The declarations prepared by the Declarants were previously stricken from Defendants' invalidity contentions.  (See Order, Oct. 29, 2007.)  However, to the extent that any party's counsel also represents a witness whose testimony is presented at trial, the fact of that representation will be considered by the Court in judging the credibility of that witness.

representing the Declarants as clients.  The Declarants provided affidavits to Defendants in "early 2007," well before the issues presented in Plaintiff's emergency request arose.  (Bucklin Decl. ¶ 2; Knowlton Decl. ¶ 3; Ambrozy Decl. ¶¶ 2-5.)  McKenna's representation of Bucklin and Lashmett arose out of "discussions" concerning their upcoming depositions, and Plaintiff offers no evidence that the question of representation was first raised by McKenna.  (Ambrozy Decl. ¶¶ 9-11.)  Thus, a relationship between McKenna and the Declarants existed prior to McKenna's representation of the Declarants at their depositions, and it is unclear how the Declarants came to retain McKenna.  Although McKenna's actions involving the Declarants raise serious questions, the record is insufficient to "justify further inquiry" by referring the matter for an investigation.

## III.   Conclusion

Though this Court has declined to refer this matter to the Court's Committee on Discipline, it must be noted that bare adherence to the minimum requirements of the Georgia Rules of Professional Conduct is not the hallmark of legal professionalism.  When the ABA shifted from the Code of Professional Responsibility to the Model Rules of Professional Conduct in 1983, the aspirational concepts of ethical considerations were sacrificed for the clarity of black letter minimum standards.  Nathan M. Chrystal, <u>The</u>

Incompleteness of the Model Rules and the Development of Professional

Standards, 52 Mercer L. Rev. 839, 842 (2001).  The sad result of this shift is

that "lawyers have tended to look at nothing but the rules; if conduct meets

the minimum standards, lawyers tend to ignore exhortations to set their

standards at a higher level."  Id. at 844.

Over the years, zealous advocacy and loyalty to the client have come to

outweigh the aspirational standards of professionalism.  Ethical

Consideration 2-4 of the ABA Code of Professional Responsibility illustrates a

more reputable approach available to counsel in situations like the instant

case:

> A lawyer who volunteers in-person advice that one should obtain
> the services of a lawyer generally should not himself accept
> employment, compensation, or other benefit in connection with
> that matter.

ABA Model Code of Professional Responsibility, Ethical Consideration 2-4

(1969).  A simple way for McKenna to have avoided any appearance of

unethical conduct wold have been to refer the Declarants to alternative

counsel when the issue of representation for the depositions was raised.  Such

a referral would have saved the time and resources of the Court and counsel

for both parties, and it would have upheld the high ethical standards of the

profession.

For these reasons, Plaintiff's emergency request for the Court to conduct an investigation into attorney misconduct by Defendants' counsel [#246] is **DENIED**.

**SO ORDERED**, this 10th day of June, 2008.

_____
JACK T. CAMP
UNITED STATES DISTRICT JUDGE