# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

```
CHEMFREE CORPORATION,            )
                                 )
      Plaintiff,                 )
                                 )
                                 )  Civil Action No.
v.                               )  1:04-CV-3711(JTC)
                                 )
J. WALTER, INC., and             )
J. WALTER COMPANY, LTD.          )
                                 )
      Defendants.                )
```

==================================================================

### CHEMFREE'S CONSOLIDATED BRIEF:

**(i)   IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON NON-ENABLEMENT; AND**

**(ii)  IN SUPPORT OF CHEMFREE'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON NON-ENABLEMENT**

==================================================================

```
                         Submitted by:

                         DUANE MORRIS LLP

                         William A. Capp (#108823)
                         Email: bcapp@duanemorris.com

                         Luke Anderson (#018330)
                         Email: landerson@duanemorris.com

                         1180 West Peachtree Street
                         Suite 700
                         Atlanta, Georgia  30309
                         Telephone:  (404) 253-6975
                         Facsimile:  (404) 253-6901

                         Counsel for Plaintiff
                           ChemFree Corporation
```

# TABLE OF CONTENTS

I.   INTRODUCTION AND PROCEDURAL POSTURE OF THE CASE........... 1

     A.   PROCEDURAL HISTORY OF WALTER'S NON-ENABLEMENT
          DEFENSE.......................................... 2

          1.   Walter's Response to Local Patent Rule
               Invalidity Contention Requirements.............. 2

          2.   Belated Assertion of a Non-Enablement
               Defense......................................... 2

          3.   ChemFree Had Insufficient Time To React to
               Walter's New Defenses........................... 4

          4.   Walter's Deposition of Dr. Durkee Went Beyond
               The Scope of His Engagement and Report.......... 5

          5.   Walter Changed Its Non-Enablement Defense
               After The Exchange of Expert Reports............ 5

     B.   MATERIAL FACTS ESTABLISHING THAT CHEMFREE'S PATENT
          CLAIMS ARE FULLY ENABLED............................ 6

          1.   At The Time of the Invention, The Art of
               Bioremediation Was Well Developed............... 6

          2.   Development Of The Invention.................... 6

II.  ARGUMENT AND CITATION OF AUTHORITY........................ 9

     A.   THE COURT SHOULD DISMISS WALTER'S ENABLEMENT
          DEFENSE ON PROCEDURAL GROUNDS BEFORE REACHING THE
          MERITS.............................................. 9

     B.   BURDEN OF PROOF ON SUMMARY JUDGMENT................. 10

     C.   GOVERNING PRINCIPLES OF THE LAW OF ENABLEMENT....... 11

     D.   THERE IS NO GENUINE ISSUE OF FACT THAT AT LEAST
          ONE MODE DISCLOSED IN CHEMFREE'S PATENT IS
          ENABLED............................................ 12

     E.   CHEMFREE'S PATENT DISCLOSURE BEARS A REASONABLE
          CORRELATION TO THE FULL SCOPE OF ITS CLAIMS........ 14

     F.   RESPONSE TO WALTER'S NON-ENABLEMENT ARGUMENTS...... 16

          1.   Response to Walter's "Nobody Knows What's In
               LRC-1 and SeaWash-7" Argument.................. 16

          2.   Response to the "Louisiana Remediation
               Company is Out of Business" Argument........... 17

          3.   Response to the "Inoperability" Argument....... 17

4.   Response to the "No Working Example"
     Argument....................................... 18

5.   Response to the "Unpredictable Art" Argument.
     .............................................. 18

6.   Response to Walter's Deposition Sound Bites.... 18

a.   Deposition Questions on Ordinary Skill........ 19

b.   Deposition Questions on Commercialization...... 20

7.   Walter Cannot Survive Judgment By Relying On
     A Conclusory Opinion of Professor Adriaens
     That Is Unsupported By Any Empirical
     Evidence....................................... 21

8.   Response to Walter's Revised "Ordinary Skill"
     Position....................................... 22

III. CONCLUSION .......................................... 24

# TABLE OF AUTHORITIES

## Cases:

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ..................................... 10, 11

*Atlas Powder Co. v. E.I. du Pont de Nemours & Co.*, 750 F.2d 1569, 1577 (Fed.Cir. 1984) ........................................ 17

*CFMT, Inc. v. Yeildup, Int'l Corp.*, 349 F.3d 1333, 1338 (Fed.Cir. 2003) ........................................... 20

*Dering v. Service Experts Alliance LLC*, 2007 WL 4299968 (N.D.Ga., Judge Story) ...................................... 19

*Engel Ind., Inc. v. Lockformer Co.*, 946 F.2d 1528, 1533 (Fed.Cir. 1991) ........................................... 13

*Genentech, Inc. v. Novo Nordisk*, 108 F.3d 1361, 1366 (Fed.Cir. 1997) ........................................... 14

*In re Angstadt*, 537 F.2d 489, 502-04 (CCPA 1976) ................... 15

*In re Borkowski*, 422 F.2d 904, 908 (CCPA 1970) .................... 18

*In re Colianni*, 561 F.2d 220, 224 (CCPA 1977) .................... 15

*In re Naquin*, 398 F.2d 863, 866 (CCPA 1968) ..................... 23

*In re Wands*, 858 F.2d 731, 735 (Fed.Cir. 1988) ......... 11, 12, 15

*John Hopkins Univ. v. Cellpro, Inc.*, 152 F.3d 1342, 1359 (Fed.Cir. 1998) ...................................... 10, 11

*Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1469 (Fed.Cir. 1993) ........................................... 11

*Plant Genetic Systems v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1339 (Fed.Cir. 2003) ........................................... 17

*Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1571 (Fed.Cir. 1991) ........................................... 12

*Sitrick v. Dreamworks LLC*, 516 F.3d 993 (Fed.Cir. 2008) ......... 5, 21

*Technicon Instruments Corp v. Alpkem Corp.*, 664 F.Supp. 1558, 1578 (D.Ore 1986) ............................................. 20

*United States Gypsum Co. v. National Gypsum Co.*, 74 F.3d 1209, 1214 (Fed.Cir. 1996) ........................................... 17

*United States v. Telectronics Inc.*, 857 F.2d 778, 785 (Fed. Cir. 1988) *cert. denied*, 490 U.S. 1046 (1989) ............. 15

**<u>Other Authorities</u>:**

MPEP § 2164................................................................ 20

MPEP § 2164.01(b)......................................................... 13

MPEP § 2164.02............................................................ 18

MPEP § 2164.05(b)......................................................... 20

MPEP § 2164.06........................................................ 15, 23

**<u>Rules</u>:**

LPR 7.3 NDGa.............................................................. 6

ChemFree herein submits its Consolidated Brief (i) in Opposition to Defendants' Motion For Summary Judgment on Non-Enablement; and (ii) in Support of ChemFree's Cross-Motion For Partial Summary Judgment on Non-Enablement.

## I. <u>INTRODUCTION AND PROCEDURAL POSTURE OF THE CASE</u>.

Walter's motion for summary judgment lacks substantive merit.  In addition, it is procedurally defective.  The instant motion proceeding provides the perfect example of why this District has adopted Local Patent Rules.  Walter presents a potentially dispositive motion on a defense that was not timely disclosed under this Court's procedural rules.   Walter's evidentiary "support" consists entirely of:  (1) a supplemental expert report that was filed without leave of court in contravention of Local Patent Rule 7.3; and (2) deposition testimony of ChemFree's expert on subject matter that was outside the scope of his engagement which presented sophisticated legal issues for which he was unprepared on the applicable legal standards.  The enablement defense should be dismissed on multiple procedural grounds, including:

(1) it was not timely asserted under the Local Patent Rules;

(2) ChemFree was not given a reasonable opportunity to develop rebuttal expert testimony; and

(3) its supporting evidence consists of an unauthorized supplemental expert report in violation of LPR 7.3 NDGa.

A.    **PROCEDURAL HISTORY OF WALTER'S NON-ENABLEMENT DEFENSE.**

1.    **Walter's Response to Local Patent Rule Invalidity Contention Requirements.**

Walter submitted its Defendants' Invalidity Contentions on September 28, 2005 [Dkt 41]; Defendants' First Amended Invalidity Contentions on October 14, 2005 [Dkt 48]; Second Invalidity Contentions on October 19, 2005 [Dkt 49]; and Third Amended Invalidity Contentions on August 22, 2007 [Dkt 236]. There is no mention of a "non-enablement" defense in <u>any</u> of these four submissions. *Id*. Fact discovery ended on August 31, 2007. [Order, Dkt 274, p.2]. The Court then struck seven of the eight references relied on in Walter's Third Amended Invalidity Contentions, terming Walter's lack of diligence in disclosing contentions "inexcusable." [*Id*. at p. 7]. Throughout the six month period after the close of fact discovery on August 31, 2007, through February 28, 2008, Walter gave no notice to ChemFree of any intention to pursue a non-enablement defense.

2.    **Belated Assertion of a Non-Enablement Defense.**

Walter engaged both new counsel and a new expert in January of 2008. [Dkt 290; Adriaens dep. p. 8:16]. On February 29, 2008, Professor Adriaens submitted his initial expert report. [Dkt 313]. Adriaens' invalidity opinion relied on eleven prior art references, including nine references that had either been previously struck by the Court or otherwise had never been

disclosed in Walter's invalidity contentions. [See Dkt 317].
Adriaens' initial report also introduced, for the first time,
seven theories of 'non-enablement.'  The entire presentation of
this defense takes up less than three pages of text.  [Dkt 313,
pp. 10-12].  The theories can be briefly summarized as follows:

**Non-Enablement Theory No. 1**:  failure to teach how often to
change the filter [p. 10];

**Non-Enablement Theory No. 2**:  failure to specify an initial
concentration of microbes [p. 11];

**Non-Enablement Theory No. 3**:  failure to disclose that
microbes require time to adapt on system start-up [p. 11];

**Non-Enablement Theory No. 4**:  failure to specify the
concentration ratio of replacement fluid [p. 11];

**Non-Enablement Theory No. 5**:  failure to explain why the
cleaning fluid can last for an extended period of time [p. 11];

**Non-Enablement Theory No. 6**:  failure to specify an
appropriate pump for dredging sludge from the tank [p. 12]; and

**Non-Enablement Theory No. 7**:  3M Super 77 Spray Adhesive is
toxic to microbes [p. 12].

The theory presented in Walter's current summary judgment
motion should be considered "**Non-Enablement Theory No. 8**," as it
presents an entirely different theory than anything mentioned in
Adriaens' initial expert report.

- 3 -

3.   **ChemFree Had Insufficient Time To React to Walter's New Defenses.**

Under the Court's Scheduling Order [Dkt 288, p.4], ChemFree had only one month to react to: (i) nine new invalidity references; and (ii) seven new enablement theories.  In response to this unfair situation, ChemFree did two things: (1) it filed a motion to strike Adriaens' report [Dkt 317]; and (2) it did its best to prepare a responsive report. [Dkt 337].

ChemFree's expert, Dr. Durkee, is one of America's preeminent experts in the parts washing field as it existed in 1994, the time of invention.  His graduate degrees are in Chemical Engineering.  [Dkt 312, p.2].  His particularized area of expertise is in the mechanical and electro-mechanical systems used in parts washers and in the chemistry involved in removing soils from contaminated parts.  [Dkt 312, pp. 2-7].

After recovering from the initial shock of receiving an expert report from Walter that flouted the local rules, ChemFree considered whether to engage an additional expert to augment Durkee's limited expertise in microbiology.  In the end, ChemFree did not engage another expert for three reasons: (i) the non-enablement theories presented in Adriaens' initial report require little or no expertise in microbiology; (ii) there was insufficient time to find a new expert and prepare a report; and

(iii) ChemFree reasonably expected the Court to grant its motion to strike Adriaens' initial report.  [Dkt 317].

### 4.   Walter's Deposition of Dr. Durkee Went Beyond The Scope of His Engagement and Report.

The burden of proof on a non-enablement defense is on Walter.  *Sitrick v. Dreamworks LLC*, 516 F.3d 993 (Fed.Cir. 2008).  Dr. Durkee's engagement on invalidity was limited to <u>rebutting</u> the scanty Adriaens report.  Nevertheless, Walter's counsel deposed Dr. Durkee at length on subject matter that was outside the scope of:  (i) Walter's invalidity contentions; (ii) Walter's expert reports; and (iii) Dr. Durkee's responsive report.

Nowhere in the Adriaens initial report is there any analysis of the amount of experimentation necessary to develop alternative modes of practicing ChemFree's invention.  Thus, ChemFree was not on notice to prepare Dr. Durkee on the underlying legal standards applicable to the mixed questions of law and fact related to enablement of alternative embodiments of an invention.  At the time, such was not even an issue in the case.

### 5.   Walter Changed Its Non-Enablement Defense After The Exchange of Expert Reports.

The exchange of expert reports was completed on April 16, 2008.  The last expert deposition was completed on May 19, 2008. Thereafter, on June 11, 2008, Walter completely revamped its non-enablement defense for the instant summary judgment proceeding. Walter's new theory <u>lowered</u> the level of ordinary skill in the

art to exclude expertise in the scientific discipline of bioremediation.  Walter now contends that, while ChemFree's patent may enable someone of ordinary skill in the field of bioremediation, it does not enable someone lacking expertise in bioremediation technology to practice the "full scope" of its claims.  Walter's new theory is supported by two evidentiary sources, namely: (i) the deposition questions where Walter bush-whacked Durkee on matters outside the scope of his engagement [*See* Dkt 370-2]; and (ii) an unauthorized supplemental report by Professor Adriaens.  [Dkt 370-4].  Walter has given ChemFree no opportunity to re-depose Adriaens on his supplemental report. *See* LPR 7.3 NDGa (supplement prejudicial).

   **B.   MATERIAL FACTS ESTABLISHING THAT CHEMFREE'S PATENT CLAIMS ARE FULLY ENABLED.**

      **1.   At The Time of the Invention, The Art of Bioremediation Was Well Developed.**

Biological processes have been in common use since the early 1900s to treat degradable wastes.  [Dkt 354, p 6].  During prosecution, ChemFree submitted numerous prior art patents and publications to the PTO regarding bioremediation technology and microbial products.  ['110 Patent "Other Publications", p.1].

      **2.   Development Of The Invention.**

ChemFree's inventors developed the microbe and fluid components of their invention during January to mid-April of 1994.  [McNally, ¶¶ 7-8].  They did not have expertise in

- 6 -

microbiology.  [McNally, ¶ 10, 11].  They purchased commercially available microbes from at least seven different suppliers that catered to the environmental clean-up and/or the waste water treatment industries. *Id*.  Similarly, ChemFree's inventors tried a number of commercially available cleaning fluids.  [McNally ¶ 13].  They tried at least a dozen different combinations of microbe products and cleaning fluids.  [McNally ¶ 18].  Most of the combinations were operable to at least some degree.  [McNally ¶¶ 18, 19].  After McClure left ChemFree and formed ABS, Rob Whiteman of ABS developed an alternative microbe product that could be used with SeaWash-7 in two weeks.  [Whiteman ¶ 9].

The best combination of cleaning fluid and microbial product discovered by ChemFree's inventors was SeaWash-7 fluid from Warren Chemical Company and LRC-1 microbes from Louisiana Remediation Company.  [McNally ¶ 18].  The particular microbes and nutrients in LRC-1 were proprietary to Louisiana Remediation. [Marks ¶ 7].  Similarly, the chemical formulation of SeaWash-7 was proprietary to Warren Chemical.  [Marks ¶ 8].

ChemFree launched its SmartWasher® product in 1994.  Since then, ChemFree has commercialized nine different cleaning fluids, all of which perform as well or better than SeaWash-7.  [McNally ¶ 22-25].  In 1998, ChemFree replaced LRC-1 with another commercially available microbial product without undertaking any extensive testing.  [McNally ¶ 22].

The SmartWasher was successfully copied by competitors even before ChemFree's patents issued. [Marks ¶¶ 13-14]. KleenTec developed its own bioremediation "juice" by combining commercially available bioremediation microbe products and cleaning fluids. [Marks ¶¶ 13-14]. ATEC Trans-Tool launched its "CleanPro" product using Natures Way PC bioremediating cleaning fluid in the late 1990s. [Marks ¶ 15-16].

A substantial number of competitors have entered the market for small, sink-on-a-drum, bioremediation parts washers and/or bioremediation cleaning fluid products for parts washers including, without limitation: Graymills, KleenTec, ATEC CleanPro, Natures Way PC, ForBest, CB Chemie (Walter), Clean[3], SRI, American Bioclean, and Envirologic SpillAway. [Marks ¶¶ 13-27]. All of these competitors, at one time or another, have used combinations of cleaning fluids and microbes other than SeaWash-7 and LRC-1. [*Id*., Shields, pp.128-129; Schudel, p.36:1-16]. For the most part, these competitors do not have extensive research and development facilities. [Marks ¶ 12]. Some ChemFree customers, on their own, substitute off-the-shelf cleaning fluids from third party suppliers for use with ChemFree microbes, rather than buy replacement fluid from ChemFree. [Marks ¶ 28].

Over the years, ChemFree has tested dozens of off-the-shelf commercially available aqueous cleaning fluids internally to determine whether they would provide an acceptable host

environment for bioremediation microbes.  [McNally ¶ 25].  In ChemFree's experience, commercially available microbial products prove to be operable in a parts washer when combined with pH neutral, biodegradable, non-flammable, aqueous cleaning fluids about 75 to 80 percent of the time.  [McNally ¶ 25].

The laboratory test procedures to determine the operability of cleaning fluids and the viability of the microbes are neither difficult, complex, nor time consuming.  [McNally ¶¶ 26-27].  The initial procedures can be reliably performed by any laboratory technician with an Associates Degree and one or two years of laboratory experience in about 24 hours using a beaker sized sample of material.  [McNally ¶ 26].  For combinations that pass the 24 hour test, a full scale test can be conducted in a parts washer apparatus in about 2 to 3 weeks. [McNally ¶ 27].

## II.  ARGUMENT AND CITATION OF AUTHORITY.

### A.  THE COURT SHOULD DISMISS WALTER'S ENABLEMENT DEFENSE ON PROCEDURAL GROUNDS BEFORE REACHING THE MERITS.

Enablement should not even be an issue in this case. Currently pending before the Court are procedural motions regarding Walter's belated assertion of an enablement defense. [Dkt. Nos. 317, 363, 378, 380, 382].  Space does not permit detailed repetition of such matters.  Suffice it to say, however, that: (i) the Court has never granted Walter leave to amend its invalidity contentions to assert an enablement defense; (ii)

Walter never sought leave until after expert reports were exchanged [Dkt 348]; (iii) Walter's current enablement defense was not formulated until after completion of expert depositions; (iv) Walter's pending motion for leave to amend its contentions does not contemplate the new theory asserted in this summary judgment proceeding; (iv) Walter's defense is supported primarily by an unauthorized supplemental expert report; (v) Walter has not given ChemFree an opportunity to develop rebuttal expert testimony to Adriaens' supplemental expert report; and (vi) Walter has not offered ChemFree an opportunity to depose Adriaens on his supplemental expert report.  The Court should dispose of the enablement defense without reaching the merits.

> **B.   BURDEN OF PROOF ON SUMMARY JUDGMENT.**

In the event that the Court considers the instant cross-motions for summary judgment on the merits (*it should not*), the evidence should be viewed in the light most favorable to the non-moving party. *John Hopkins Univ. v. Cellpro, Inc.*, 152 F.3d 1342, 1359 (Fed.Cir. 1998)(granting summary judgment of enablement in favor of patentee).  Any evidentiary doubts should be resolved in the non-moving party's favor. *Id*.  The Court should also view the evidence presented through the prism of the substantive evidentiary burden that will inhere at trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986).  Walter bears the burden to prove lack of enablement by clear and convincing evidence.   *See Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1469 (Fed.Cir. 1993).

To survive summary judgment, Walter's evidence must do more than merely raise some doubt about whether the claims are enabled. *John Hopkins*, 152 F.3d at 1359, *citing Anderson*, 477 U.S. at 249-50.  Rather, Walter's evidence must show the existence of a material factual dispute upon which a reasonable fact finder could resolve enablement in Walter's favor.  *John Hopkins, supra* at 1359.  In the instant case, Walter cannot survive summary judgment, much less prevail on summary judgment.

**C.   GOVERNING PRINCIPLES OF THE LAW OF ENABLEMENT.**

Whether an invention is enabled is a legal conclusion based upon underlying factual inquiries.  *In re Wands*, 858 F.2d 731, 735 (Fed.Cir. 1988).  "Whether undue experimentation is needed is not a single, simple factual determination, but rather is a conclusion reached by weighing many factual considerations." *Id.* at 737.[1]  The purpose of the enablement provision is to assure that the invention provides sufficient information that a person

---

[1] The "*Wands* factors," include (1) the quantity of experimentation necessary, (2) amount of direction or guidance presented, (3) presence or absence of working examples, (4) nature of the invention, (5) state of the prior art, (6) relative skill of those in the art, (7) the predictability of the art, and (8) the breadth of the claims. *Id*.

of skill in the field of the invention can make and use it without undue experimentation, relying on the patent specification and the knowledge in the art.  *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1571 (Fed.Cir. 1991). "Enablement is not precluded by the necessity for some experimentation such as routine screening" *Wands,* 858 F.2d at 736-37.  "The key word is 'undue,' not experimentation." *Id*. The scope of enablement includes not only the denotative text of the specification but also the scope of what would be known to one of ordinary skill in the art without undue experimentation. *National Recovery Technologies, Inc. v. Magnetic Separation Systems, Inc*. 166 F.3d 1190 (Fed.Cir. 1999).

### D.   THERE IS NO GENUINE ISSUE OF FACT THAT AT LEAST ONE MODE DISCLOSED IN CHEMFREE'S PATENT IS ENABLED.

ChemFree's patents teach the use of "*microorganisms that biodegrade organic compounds*," further supported by the following disclosure:

> The biological component is preferably in the form of microorganisms that biodegrade organic compounds . . . Acceptable microorganisms, for example and not limitation, are those from the genera Bacillus, Pseudomonas, and Flavobacterium. **Suitable species are well known and reported in the art**.

['110 patent, 4:49-63 (*emphasis added*)].  There is no genuine dispute in this case that, as of 1994: (i) microorganisms were known to biodegrade hydrocarbons in oils and greases; and (ii) suitable species of such microorganisms were well known and

reported in the scientific literature.   [Adriaens dep. pp.51:16-52:13].   ChemFree's reference to suitable species being well known in the art constitutes adequate enabling disclosure.   *Bayer AG v. Schein Pharma, Inc*. 301 F.3d 1306, 1314 (Fed.Cir. 2002) (the enablement requirement can be met by reference to the knowledge of one of ordinary skill in the relevant art).

The patents also disclose the use of a "*cleaning fluid*" that includes a "*surfactant that functions to remove organic waste from the parts being washed*."   ['110 patent, 2:15-17].   This element is supported by the following disclosure:

> An acceptable cleaning fluid ... is a mixture of pH neutral emulsifiers and surfactants ... blended in liquid form to produce a biodegradable, non-toxic, non-caustic, non-flammable oil dispersant cleaner and degreaser ...

['110 Patent, 6:4-27].   LRC-1 and SeaWash-7 are commercially available products that were cited in the specification as examples of suitable microbes and cleaning fluid.   There is no question that the combination of SeaWash-7 and LRC-1 is operable. ChemFree sold this combination commercially. [McNally ¶¶ 18-23].

As long as the specification discloses one method for making and using the invention that bears a reasonable correlation to the entire scope of the claim, then the enablement requirement of 35 U.S.C. § 112 is satisfied.   MPEP § 2164.01(b); *Engel Ind., Inc. v. Lockformer Co*., 946 F.2d 1528, 1533 (Fed.Cir. 1991)(the enablement

requirement is met if the description enables any mode of making and using the claimed invention).

It is well settled that "omission of minor details does not cause a specification to fail to meet the enablement requirement." *Genentech, Inc. v. Novo Nordisk*, 108 F.3d 1361, 1366 (Fed.Cir. 1997). Thus, although the ChemFree patent does not specify an initial concentration of microbes, Walter's expert conceded that such could be determined without undue experimentation. [Adriaens dep. pp. 238:13-241:4]. Similarly, although the ChemFree patent does not specify a particular surfactant-to-water dilution ratio for the cleaning fluid, any skilled practitioner could derive an acceptable ratio without undue experimentation. [Durkee report, Dkt 337, p. 207].[2]

### E.   CHEMFREE'S PATENT DISCLOSURE BEARS A REASONABLE CORRELATION TO THE FULL SCOPE OF ITS CLAIMS.

The claims of ChemFree's '110, '491, '835, and '125 Patents have limitations directed to:  (i) microbes; and (ii) cleaning fluid.  Generally, the microbe limitation is stated as: "*microorganisms within the parts washer for biodegrading the hydrocarbons*" or a substantially similar expression.  ['110 patent, claim 1].  The cleaning fluid limitation is generally stated as: "*a biodegradable,*

_____

[2] Dilution ratios were taught in the prior art - "The tenside content is preferably maintained at between 1-15% by weight, preferably between 2-5% by weight in the case of objects soiled to normal levels ..."  [*Hakansson-1*, p.3:12-14].

*non-toxic, non-caustic, non-flammable oil dispersant and degreaser fluid*," or a

substantially similar expression.   *Id*.

ChemFree's enabling disclosure bears a reasonable
correlation to the full scope of its claims.  At the time the
application was filed, anyone could practice the invention by
purchasing SeaWash-7 and LRC-1 from commercial suppliers.
Numerous other combinations of hydrocarbon degrading microbes and
cleaning fluids are operable in its parts washer apparatus.
[McNally ¶¶ 11-19; Marks ¶¶ 12-29; Whiteman ¶¶ 9, 12, 13; Shields
dep., pp. 128-129; Schudel dep., p. 36:1-16].  The Manual of
Patent Examining Procedure gives the following guidance to assist
patent examiners in analyzing undue experimentation:

> The quantity of experimentation needed to be performed by
> one skilled in the art is only one factor involved in
> determining whether "undue experimentation" is required to
> make and use the invention. "[A]n extended period of
> experimentation may not be undue if the skilled artisan is
> given sufficient direction or guidance." *In re Colianni*, 561
> F.2d 220, 224 (CCPA 1977). "'The test is not merely
> quantitative, since a considerable amount of experimentation
> is permissible, if it is merely routine, or if the
> specification in question provides a reasonable amount of
> guidance with respect to the direction in which the
> experimentation should proceed.'" *In re Wands*, 858 F.2d 731,
> 737, 8 USPQ2d 1400, 1404 (Fed.Cir. 1988)(citing *In re Angstadt*,
> 537 F.2d 489, 502-04 (CCPA 1976)). Time and expense are
> merely factors in this consideration and are not the
> controlling factors. *United States v. Telectronics Inc.*, 857 F.2d 778,
> 785 (Fed. Cir. 1988) *cert. denied*, 490 U.S. 1046 (1989).

MPEP § 2164.06.

Under any reasonable analysis, the amount of experimentation required to develop an operable combination (other than SeaWash-7 and LRC-1) is not undue.  Hydrocarbon degrading microbes have been readily available for commercial sale from suppliers that cater to the environmental clean-up and waste water treatment industries since before ChemFree's date of invention.  [McNally ¶ 11].  Similarly, pH neutral, non-flammable cleaning fluids have been readily commercially available since before ChemFree's date of invention.  [McNally ¶ 13].  A full-scale test of a microbe/fluid combination can be completed in about 2 to 3 weeks.  [McNally ¶¶ 26-27].  In ChemFree's experience, when a test candidate hydrocarbon degrading microbial product is combined with a test candidate biodegradable, non-caustic, non-flammable oil dispersant cleaning fluid, test results prove the combination to be operable in about 75 to 80 percent of test cases.  [McNally ¶ 25].  Generally, an operable combination can be discovered in no more than a handful of attempts.  [McNally ¶¶ 25-28; Marks ¶ 15].  This does not constitute "undue experimentation."

**F.   RESPONSE TO WALTER'S NON-ENABLEMENT ARGUMENTS.**

**1.   Response to Walter's "Nobody Knows What's In LRC-1 and SeaWash-7" Argument.**

Walter's argument that ChemFree did not disclose the constituent components of LRC-1 and SeaWash-7 is without merit. At the time, LRC-1 and SeaWash-7 were proprietary.  [Marks ¶¶ 7-

8].  Nevertheless, ChemFree was <u>required</u> by governing PTO practice and procedure to disclose LRC-1 and SeaWash-7 by their trade name or risk invalidation under the "best mode" provisions of 35 U.S.C. § 112.  *See e.g. United States Gypsum Co. v. National Gypsum Co.*, 74 F.3d 1209, 1214 (Fed.Cir. 1996)(patent held invalid on summary judgment for failure to disclose best mode where best mode included a commercial product whose composition was proprietary and, therefore, unknown to patent applicant).

>    **2.    Response to the "Louisiana Remediation Company is Out of Business" Argument.**

Enablement is determined as of the effective filing date of the patent.  *Plant Genetic Systems v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1339 (Fed.Cir. 2003).  The fact that Louisiana Remediation Company went out of business and stopped selling LRC-1 years after the filing date is irrelevant.

>    **3.    Response to the "Inoperability" Argument.**

The possible presence of inoperative embodiments within the scope of a claim does not render a claim non-enabled.  The standard is whether a skilled person could determine which embodiments would be operative with expenditure of no more effort than is normally required in the art.  *Atlas Powder Co. v. E.I. du Pont de Nemours & Co.*, 750 F.2d 1569, 1577 (Fed.Cir. 1984).  Using this standard, ChemFree's claims are enabled.

### 4.   Response to the "No Working Example" Argument.

The specification need not contain a working example of the invention if the invention is otherwise disclosed in a manner that would allow someone skilled in the art to practice it without an undue amount of experimentation.   MPEP § 2164.02; *In re Borkowski*, 422 F.2d 904, 908 (CCPA 1970).

### 5.   Response to the "Unpredictable Art" Argument.

Even in unpredictable arts, the disclosure of every operable species is not required.   MPEP § 2164.03.   The parts washing art is a relatively low-tech industry.   [Durkee report, p. 107]. Nevertheless, the empirical evidence in this case indicates that operable combinations of fluids and microbes can be developed by relatively unsophisticated practitioners in a matter of a few days to a few weeks.   [McNally ¶¶ 23-28; Whiteman ¶ 9].   Even accepting that developing a bioremediation parts washing fluid is less predicable than the mechanical arts, combining microbes and cleaning fluid to create an operable bioremediation parts washer, while not obvious in 1994, is still reasonably predictable provided that the teachings of ChemFree's patent are followed.

### 6.   Response to Walter's Deposition Sound Bites.

Walter bush-whacked Dr. Durkee, questioning him at length on matters that had never been properly raised in Walter's invalidity contentions or expert reports.   Durkee is a scientist, not a patent attorney.   He is not expected to know the underlying

legal standards applicable to the law of enablement.  The Court does not send a patent case out to a lay jury for deliberation without first giving jury instructions on the applicable legal principles.  For essentially the same reason, if Durkee was going to be questioned on mixed questions of law and fact, he was entitled to proper notice so he could be prepared on the underlying legal standards.

The sound bites that Walter quoted from Durkee's deposition mischaracterize his testimony.  In this District, a deponent may make substantive changes to his or her deposition testimony on an errata sheet.  *See e.g., Dering v. Service Experts Alliance LLC*, 2007 WL 4299968 (N.D.Ga., Judge Story).  Durkee, on his errata sheet, revised his testimony after receiving additional instruction on the legal standards applicable to enablement.  Walter neglected to file Dr. Durkee's errata sheet with the Court and further failed to advise the Court that the deposition sound-bites quoted in its brief did not accurately reflect Dr. Durkee's complete testimony.

**a. Deposition Questions on Ordinary Skill.**

Walter questioned Dr. Durkee at length about the ability of someone of ordinary skill in the parts washer art to develop alternative embodiments to ChemFree's invention.  At his deposition, Dr. Durkee was not aware of the underlying legal principle that when a patent involves multiple technical

disciplines, the patent may be practiced by persons of ordinary skill in each of the respective disciplines.

> If two distinct technologies are relevant to an invention, then the disclosure will be adequate if a person of ordinary skill in each of the two technologies could practice the invention from the disclosures.

MPEP § 2164.05(b)(*quoting  Technicon Instruments Corp v. Alpkem Corp*., 664 F.Supp. 1558, 1578 (D.Ore 1986)).  Dr. Durkee's errata sheet testimony reflects the foregoing legal standard.  [pp. 13-17].

### b. Deposition Questions on Commercialization.

Dr. Durkee was questioned at length about the ability of a person of ordinary skill in the parts washer art (only) to develop a viable commercial product under unrealistic time constraints. [p. 174:13-22 ("... *up and running in two days*"].  At the time, Durkee was not aware of the underlying legal principle that patents need only enable "operable" embodiments, not commercially viable products.

> It is not necessary to enable one of ordinary skill in the art to make and use a perfected, commercially viable embodiment.

MPEP § 2164, *quoting CFMT, Inc. v. Yeildup, Int'l Corp*., 349 F.3d 1333, 1338 (Fed.Cir. 2003).  Durkee's errata sheet reflects the foregoing legal standard.  [pp. 20-24].

7.   **Walter Cannot Survive Judgment By Relying On A Conclusory Opinion of Professor Adriaens That Is Unsupported By Any Empirical Evidence.**

Walter's reliance on the naked, conclusory opinion in Professor Adriaens' supplemental expert report (aka "declaration") is of no moment.  Professor Adriaens is an ivory tower academician with no background in parts washers, especially relative to the 1994 time frame.  His opinions on ordinary skill in the parts washer art amount to the speculative musings of an academician who is completely detached from the realities of the parts washing industry.  [Adriaens dep. pp 13-32].

Prior to forming his opinions, Adriaens did not review any of the empirical evidence in this case, such as the depositions of the inventors.  He did not consider empirical evidence from ChemFree and Walter's competitors. [Adriaens dep. pp. 142:24-144:6].  He did not even talk to Walter and seems totally unaware that CB Chemie developed Walter's BioCircle fluid in a matter of weeks with no reported difficulty.  [Schudel dep., p. 36:1-16].

"Conclusory expert assertions cannot raise triable issues of material fact on summary judgment."  *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1001 (Fed.Cir. 2008)(granting summary judgment in favor of accused infringer on non-enablement defense over conclusory opposing expert opinion).  Like Professor Adriaens in the instant case, the disregarded expert in *Sitrick* had little or no industry experience in the technology at issue.

**8.    Response to Walter's Revised "Ordinary Skill"
       Position.**

Walter has taken inconsistent and irreconcilable positions
on the level of ordinary skill in the art.  In Adriaens' initial
report, the person of ordinary skill suffers from some kind of
pre- and post-filing date schizophrenia.  Before the filing date
of ChemFree's patent application, Professor Adriaens' person of
ordinary skill is so brilliant that he finds it "obvious" to make
and use ChemFree's invention, even without the benefit of
ChemFree's patent disclosure.  [Dkt 313].  Then, after receiving
ChemFree's patent disclosure, Adriaens' person of ordinary skill
suddenly becomes so stupid that he cannot develop an operable
combination of microbes and fluid, even with the help of
ChemFree's patent disclosure.  [Dkt 313].

However, Adriaens completely repudiated his initial opinion
during his deposition, readily conceding that someone of ordinary
skill in bioremediation technology can develop an operable
combination of microbes and fluid without undue experimentation.

Q  I was giving this person of ordinary skill in the art the
   benefit of all of the collective knowledge, wisdom,
   reasoning, teaching disclosure of all 11 of the prior art
   references that you rely on in your expert report.

A  In that case, they would be able to find a combination.

Q  Without undue experimentation?

A  That's correct.  Because some of that is disclosed in prior
   art . . . So if he got the benefit of all the prior art, I
   mean -- then **you do not need undue experimentation**.

- 22 -

[Adriaens deposition, pp. 202:20-203:21].  This admission
normally would have dispensed with Walter's enablement defense.
However, Walter has since revised its enablement defense by
<u>lowering</u> the level of ordinary skill to someone without expertise
in bioremediation.  [*See* Walter's brief, p.18, n4].

Now, for purposes of this motion, Walter uses two <u>different</u>
persons of ordinary skill:  (i) a high functioning individual for
the obviousness defense; and (ii) a low functioning individual
for the enablement defense.  Walter's new "non-enablement" person
of ordinary skill lacks expertise in bioremediation technology.
[*See* Adriaens decl., Dkt 370-4 p. 7 *"for purpose of this declaration only ...."*]

As recognized by the Court, ChemFree's invention is
comprised of three components:  (i) fluid component; (ii)
biological component; and (iii) mechanical component.  [*Markman
Order*, Dkt 212, pp. 2-3].  Thus, ChemFree's invention brings
together technology from multiple scientific disciplines.

Prior to ChemFree's commercialization of the SmartWasher,
there was no "bioremediation parts washer industry."  Apart from
the large, complex industrial machines disclosed in *Hakansson-1* and
*Hakansson-2*, there were no bioremediation parts washers that
predated ChemFree's invention.  Thus, someone in the "parts
washer" art, who wanted to practice ChemFree's invention, could
reasonably be expected to associate someone with skills in the

field of hydrocarbon contamination bioremediation to assist in development of an operable embodiment. This principle is deeply rooted in the law of enablement:

> Where different arts are involved in the invention, the specification is enabling if it enables persons skilled in each art to carry out the aspect of the invention applicable to their specialty.

MPEP § 2164.06, *citing In re Naquin*, 398 F.2d 863,866 (CCPA 1968). Walter's new theory of non-enablement depends on dummying down the level of ordinary skill to someone with knowledge of parts washers, but having no expertise in bioremediation. [See Walter's brief, Dkt 370-3, p.18, n4 "*for purposes of this motion only*" (emphasis supplied by Walter]. This approach should be rejected.

### III. <u>CONCLUSION</u>

The Court should dismiss the non-enablement defense on procedural grounds because it was not raised in a timely manner. The fact that Walter replaced its legal counsel five months after the close of fact discovery does not justify interjecting entirely new defenses at this late stage of the case. In particular, presenting an entirely new enablement defense for the first time in an expert declaration after the close of fact discovery, after the exchange of expert reports, and after the close of expert deposition discovery is particularly egregious. This Court's rules deem supplemental expert reports to be "presumptively prejudicial." LPR 7.3 NDGa. Walter has made no

- 24 -

showing to rebut that presumption.  This Court's rules require
that "all reasonable steps" be taken to ameliorate prejudice to
the responding party.  *Id*.  Walter has done nothing to ameliorate
prejudice to ChemFree.  Indeed, Walter's strategy here is to use
its own misconduct to take unfair advantage of ChemFree.

If the Court reaches the merits (*it should not reach the merits*), it
should DENY Walter's motion for summary judgment and GRANT
ChemFree's cross-motion for summary judgment.  Walter's position
hinges entirely on an incorrect approach to determining the level
of ordinary skill in "the art."  Before ChemFree's invention,
there was no "bioremediation parts washer industry."  ChemFree's
invention pioneered an entirely new product application.  The
invention combined technology from two scientific disciplines:
(i) parts washing; and (ii) bioremediation.  In 1994, the person
of ordinary skill in parts washing had little or no expertise in
bioremediation.  However, after ChemFree invented the
bioremediation parts washer, an entity desiring to practice the
invention could be expected, if needed, to use persons of
ordinary skill from the parts washing art and persons of ordinary
skill from the art of bioremediation.  This is what the law
allows.  If the Court applies the correct legal standard, there
is no genuine issue of material fact and ChemFree is entitled to
judgment as a matter of law that its patents are fully enabled.

Respectfully submitted, this 14th day of July, 2008.

Duane Morris LLP

_____/s/ _William A. Capp__

William A. Capp
Georgia Bar No. 108823
*bcapp@duanemorris.com*
Luke Anderson
Georgia Bar No. 018330
*landerson@duanemorris.com*

700 Atlantic Center Plaza
1180 West Peachtree Street NW
Atlanta, Georgia  30309-3448
Tel:  404-253-6900
Fax:  404-393-5183

Counsel for Plaintiff
    ChemFree Corporation

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2008, I electronically filed **CHEMFREE'S CONSOLIDATED BRIEF: (i) IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON NON-ENABLEMENT; AND (ii) IN SUPPORT OF CHEMFREE'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON NON-ENABLEMENT** the within and foregoing brief with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all counsel of record.

DUANE MORRIS LLP

/s/ *William A. Capp*

William A. Capp
Georgia Bar No. 198823
*bcapp@duanemorris.com*

700 Atlantic Center Plaza
1180 West Peachtree Street NW
Atlanta, Georgia  30309-3448
Tel:  404-253-6900
Fax:  404-393-5183

Counsel for Plaintiff,
  ChemFree Corporation

> In accordance with Local Rule 7.1D,
> counsel for Plaintiff certifies that
> the foregoing has been prepared using
> the font Courier New 12 point.

- 27 -