IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHEMFREE CORPORATION,

        Plaintiff,

  vs.

J. WALTER, INC.
J. WALTER COMPANY, LTD,

        Defendants.

No. 1:04-CV-3711 (CRW)

RULINGS DENYING POST-TRIAL MOTIONS
AND DIRECTING ENTRY OF JUDGMENT

      The backdrop for these final rulings in this patent infringement lawsuit is a five-day bench trial, followed by a final decision declaring patents invalid for obviousness, followed by three post-trial motions for reconsideration, and then the sudden unexpected resignation of the trial judge to whom the motions had been submitted for ruling.

      The patents in issue concern the parties' competing bioremediating parts washing machines used to clean small pieces of metal using environmentally suitable means.  The plaintiff Chemfree Corporation ("Chemfree") holds the patents-in-suit.[1]  Chemfree argues that defendants J. Walter, Inc. and J. Walter Company, Ltd. (collectively "Walter") have infringed the patents by using, transporting, offering to sell, and selling their "Walter Parts Washer and Walter Cleaning Fluid."

      To complete the district court proceedings, the undersigned Senior United States

---

[1]The Chemfree patents-in-suit are described in Exhibits A and B appended to the Bench Decision filed on June 18, 2010.

District Judge was designated by the Chief Justice to serve as successor to the trial judge.  These final rulings follow extensive review, reading, and analysis of the entire record.  Studied were all materials designated by the parties, including pretrial motions and rulings, the entire trial transcript, lengthy briefs, and the proposed decisions filed by the parties before and after the bench trial. [2]  This Successor Judge (hereafter "the court") also held a full-day hearing in Atlanta, Georgia on February 11 to receive additional evidence, then arguments of counsel concerning the merits of the three resisted post-trial motions requesting reconsideration and a new trial.

Being now fully informed, the court denies the post-trial motions and directs the clerk of court promptly to enter final judgment for defendants J. Walter, Inc. and J. Walter Company, Ltd. and against plaintiff Chemfree Corporation, with costs to be paid by Chemfree Corporation.

I. Procedural Background.  On July 13 through 17, 2009, Senior United States District Judge Jack C. Camp held a bench trial in this patent infringement case on Chemfree's claims for damages and a permanent injunction against Walter.  Chemfree's complaint sought to enjoin Walter from infringing the asserted claims in the patents-in-suit by making, using, importing, offering to sell, or selling the Walter Parts Washer and Walter Cleaning Fluid.   On June 18, 2010, Judge Camp issued a lengthy Order, constituting findings of fact and conclusions of law, in which he concluded that the asserted patent claims were invalid as obvious in accordance with 35 U.S.C. section 103.  Trial had been bifurcated, so damage issues were not

---

[2]This Successor Judge certifies complete familiarity with the record, in accordance with Federal Rule of Civil Procedure 63.  See Mergentime Corp. v. Washington Metro. Area Transit Auth., 166 F.3d 1257, 1264 (D.C. Cir. 1999); Canseco v. U.S., 97 F.3d 1224, 1226 (9th Cir. 1996).

reached.

On July 6, 2010, Chemfree filed a timely motion for reconsideration or, alternatively, for a new trial.  On July 23, 2010, Chemfree filed a second motion for additional findings and conclusions; and then on October 12 Chemfree filed a third similar post-trial motion.  Before Judge Camp heard and decided the motions, he resigned from the bench on November 19, 2010.[3]  At the request of the Chief Judge of this court, the Chief Judge of the United States Court of Appeals for the Eleventh Circuit certified the necessity for the designation and assignment of a judge from another court to succeed Judge Camp in this case, and on December 23, 2010, the Chief Justice assigned the undersigned judge to serve in this court by intercircuit assignment.  Finally, the chief judge of this court (NDGA) ordered the undersigned judge to preside in this case, succeeding Judge Camp.

Following a January phone conference call with counsel to discuss status and to schedule further proceedings, the parties presented a full day of oral argument on the motions. The court also provisionally received, pursuant to Federal Rule 63, inventor testimony.[4] The court found the testimony of Thomas M. McNally, a co-inventor, informative.  But he was not a credible witness when he deviated from the testimony he had presented during his pretrial

---

[3] Chemfree requests that the undersigned judge certify why Judge Camp resigned and retired.  This subject was discussed with counsel in camera at the beginning of the February 11 hearing.  Evidence presented consisted of media reports and the records of federal criminal proceedings concerning the drug and firearm charges and Judge Camp's plea of guilty. Although some of the criminal conduct apparently occurred in the weeks immediately before Judge Camp filed his final bench trial order, the case had been submitted to him for decision many months before.  This successor judge concludes the criminal conduct that led to his resignation did not adversely affect in any way his interim rulings and final bench findings and conclusions holding the patents in issue invalid for obviousness.

[4] The court hereby grants nunc pro tunc Chemfree's motion to recall witness, effective February 11, 2011.

deposition and at trial.  Then he had emphasized how the patent readily enabled ordinary persons to practice its teachings without undue experimentation.  <u>See</u> Docket No. 550, p.31.  At the time, Judge Camp cautioned Chemfree that this position on enablement might make the patents "begin to look pretty obvious." Pre-trial Hearing Dec. 12, 2008 Tr. 48: 11-19.  So McNally's post-trial testimony  was a weak attempt to show the patent ideas not obvious.  The court confirms the findings of fact of Judge Camp on obviousness, notwithstanding McNally's post-trial testimony attempting to dilute his pretrial and trial testimony supporting Chemfree's position on enablement, testimony that weakened Chemfree's position on the critical obviousness issue.

II.  <u>Timeliness of Chemfree's Rule 52 Motions.</u>   Although Walter contends that the second and third of Chemfree's post-trial motions were untimely and should not be given any consideration, this successor judge disagrees.  The first motion filed on July 6, 2010, was plainly within the time required by Federal Rule of Civil Procedure 52 (a).  The second and third motions, filed on July 23 and October 12, were also ready for ruling before Judge Camp resigned.  The grounds of the later motions were essentially continuations of the timely July 6 motion and raised closely-related issues, not entirely new contentions.  So the court will address and decide all of Chemfree's arguments,  regardless which of the three motions specifically raised or argued each issue.

III.  <u>Familiarity with Entire Record.</u>  This successor judge is now familiar with the entire relevant record, as required by Federal Rule 63.   The task of succeeding as presiding judge has been heavy, requiring review, analysis, and understanding of thousands of pages within many hundreds of docket entries and pleadings, briefs, and pretrial rulings.  The lengthy trial transcript has been of particular importance, especially when viewed under the lens of the parties' conflicting views on nearly every factual issue.  Close reading of the trial transcript pages and many exhibits has required several months of focused attention to this case.  This

successor judge now does certify familiarity with the record, in accordance with what Federal Rule 63 expects of a successor judge in the unusual circumstances of this case.

        IV.  The Order Challenged by Chemfree's Rule 52 Motions.  All three motions attack the fundamental holding of the June 18, 2010 order, described by Judge Camp as "findings of fact and conclusions of law pursuant to Rule 52 (a)."  The order concluded "the asserted claims of the '226, '110, '835, and '125 patents are invalid as obvious."  The obviousness analysis relied primarily on principles explained by the Court in Graham v. John Deere Co, 383 U.S. 1 (1966) and KSR Int'l Co. v. Teleflex, Inc., 550 U.S. 398 (2007), analyzing whether an invention would have been obvious to a person having ordinary skill in the art to which the subject matter pertains at the time the invention was made.  35 U.S.C. § 103 (a).  "Obviousness is a question of law based on underlying findings of fact."  Western Union Co. v. MoneyGram Payment Sys., 626 F.3d 1361, 1369 (Fed. Cir. 2010); In re Kubin, 561 F.3d 1351, 1355 (Fed. Cir. 2009).  Underlying factual inquiries include scope and content of the prior art, differences between the prior art and claims in issue, practitioners' level of ordinary skill in the art, and such secondary considerations as commercial success, long-felt but unsolved needs, and other persons trying to achieve the result sought.  Graham, 383 U.S. at 17-18.

        Judge Camp's order applied to the facts in this case the teachings of those cases, in particular KSR that provides a more expansive and flexible approach in determining obviousness.  The order addressed in considerable detail the Chemfree date of invention as early as March of 1994, the physical and chemical makeup of biomediating parts washers before then disclosed, the relatively low level of skill in the art for developing and manufacturing parts washers, and the importance of satisfying environmental concerns, all creating a quest to solve the problem Chemfree was addressing at the time.

Judge Camp's order also well analyzed the differences between the patent claims in issue and the prior art references–especially Hakansson-2 and Athey–while explaining that the sink-on-a-drum configuration was already well known in the parts washing industry.  Evidence supports Judge Camp's finding that Hakansson-2 and Athey, together with general knowledge of persons skilled in the art, disclosed all elements of the claims in the Chemfree patents-in-suit.

Judge Camp's order acknowledged and adequately considered those facts Chemfree presented in arguing for non-obviousness, including such secondary considerations as the recognition Chemfree's parts washers received from the industry and industry awards for innovation.  Some competitors copied the Chemfree idea, and the Walter defendants purchased patents that applied methods similar to Chemfree's parts washers.

Judge Camp's order correctly identified the patents-in-suit as "combination inventions," consisting of prior art elements that together achieve no "unusual or surprising" consequences.  See Great Atlantic & Pac. Tea Co. v. Supermarket Equip. Corp., 340 U.S. 147, 152 (1950).   It is noteworthy that Judge Camp's order found facts and reached conclusions favorable to Chemfree on all issues except invalidity for obviousness.  The order decided for Chemfree and against Walter the questions of infringement, inventorship, and the Walter contention that the '226 patent was invalid due to anticipation by the Hakansson-2 reference. The order recognized that an issued patent is presumed valid (Order p. 28).

The order's conclusion of obviousness is supported by the facts set forth as findings and summarized in the order filed June 18, 2010.  The order (p. 62) correctly put the burden on Walter to "demonstrate by clear and convincing evidence" that the patents were invalid as obvious.  Judge Camp concluded that Walter satisfied that heavy burden of proof on the obviousness issue that was necessary to overcome the presumption of validity given a patent

duly issued by the U.S. Patent Office.  See 35 U.S.C. §282.  Here, the trial judge as finder of fact applied the correct measure of proof and set forth in sufficient detail facts supporting the conclusion that Walter had satisfied that heavy burden.

V.  Authority of Successor Judge Under Rules 52 (b) and 63.  This court may now amend, confirm, or reverse findings of fact, reconsider previous rulings, and even grant a new trial if the final order as entered is incorrect, in whole or in part.  See Golden Blount, Inc. v. Robert H. Peterson Co., 438 F.3d 1354, 1358 (Fed. Cir. 2006).  This successor judge has reviewed the entire record and the final order, as challenged by Chemfree's three motions, without giving deference to the trial judge's advantage of being present at trial to see and hear all witnesses.  This successor judge finds no sound basis for changing any part of Judge Camp's well-reasoned order entered on June 18, 2010.

VI.  Discussion of the Three Motions.

A.  In its first motion for reconsideration, Chemfree moves the court to reconsider its interpretation of "non-caustic" or to reopen Markman proceedings in order to construe the term with greater particularity.  It also asks the court to reconsider "inherency" determinations that Chemfree contends were based on excluded evidence and to make additional findings on secondary considerations of nonobviousness.

The court finds the claim construction satisfactory and does not reopen the Markman rulings to modify the meaning of "non-caustic."  Although Chemfree now contends only human organic tissue was meant, the order adopted the construction both parties proposed before trial, with "such as the skin of the operator" intended to be an example only, not a strict limitation.  See Docket No. 114, ¶ 4.  Chemfree's post-trial proposal to redefine "non-caustic" more narrowly would create uncertainty in that important term.  Moreover, Hakansson-2

adequately disclosed a "non-caustic" solution in describing three types of fluid: one with low pH, one with high pH, and one neutral.  Thus did it describe a cleaning fluid that would sustain an active biological growth.

Judge Camp's order correctly found that a person skilled in the art could create an operable system based in part on Chemfree's emphasis on simplicity for enablement purposes. And Judge Camp's order also acknowledged secondary considerations, like praise accorded Chemfree products when first introduced and some copying by others.  But the order was clear in concluding the secondary considerations did not overcome the prima facie proof of obviousness.

B.  In its second motion, Chemfree asks the court to make additional findings that the two prior art references the court relied upon in its findings of fact and conclusions of law–Hakansson-2 and Athey–do not contain a sufficient teaching disclosure to enable a person of ordinary skill in the art to make and use the patented invention for purposes of an obviousness analysis under section 103.

Chemfree failed to present at trial, or even in the post-trial testimony of McNally, credible evidence that the prior art references contained insufficient teaching for enablements of persons skilled in the art.  The prior art references were more than just Hakansson-2.  Prior art included well-recognized available fluid combinations and the recognized pent-up demand for environmentally-friendly cleaning methods.

C.  In its third motion, Chemfree moves the court to reconsider findings that (1) an environmental engineer would have known of an existing cleaning fluid for use in plaintiff's invention, (2) a person of ordinary skill in the art would have understood that Hakansson-2 inherently discloses a cleaning fluid that is "biodegradable, non-toxic, non-caustic, and inflammable," and (3) the Overland '147 patent and CB Chemie's bioremediation parts washer

cleaning fluid constitute objective indicia of obviousness.

The court does not change those findings in the order.  They were supported by evidence received during the trial.  Moreover, some arguments in Chemfree's third motion for reconsideration are truly new issues and were not presented earlier at trial.  The court properly found persons ordinarily skilled in the art would know a cleaning fluid used in a machine-parts washer should be non-flammable.  Moreover, the order properly referred to the Overland patent, though it was  filed later than most of the patents-in-suit, given that the two Chemfree continuation patents were not filed until early in the year 2000.

VII.  <u>Conclusion</u>.  The court denies Chemfree's Rule 52 motions for the reasons here set forth, the additional sound arguments presented by Walter in its briefs and resistances to Chemfree's three post-trial motions, and fundamentally because Judge Camp's order was well reasoned and rooted in the trial evidence and applicable law.

The clerk of court shall enter final judgment in favor of J. Walter, Inc. and J. Walter Company, Ltd. and against Chemfree Corporation, declaring the patents-in-issue invalid for obviousness and dismissing this lawsuit with prejudice, with taxable costs to be paid by Chemfree Corporation.

IT IS SO ORDERED.

Dated this 3rd day of June, 2011.


CHARLES R. WOLLE, JUDGE
U.S. DISTRICT COURT